Present:  Hassell, C.J., Lacy, Keenan, Koontz, Kinser, and
Lemons, JJ., and Compton,* S.J.

THOMAS RANDOLPH LEWIS

v.  Record No. 051349  OPINION BY JUSTICE CYNTHIA D. KINSER
                                          April 21, 2006
COURTENAY MUNFORD LEWIS

                FROM THE COURT OF APPEALS OF VIRGINIA


     A panel of the Court of Appeals of Virginia decided

that a circuit court's interlocutory decree dismissing a

cross-bill for annulment of a marriage "adjudicat[ed] the

principles of a cause" and was thus appealable under Code

§ 17.1-405(4)(ii).  Lewis v. Lewis, Record No. 1807-04-2,

slip op. at 3 (May 10, 2005).  Because the interlocutory

decree did not "respond to the chief object" of the

domestic relations dispute and did not determine "'the

principles' that are necessary to adjudicate the cause," we

conclude that the decree was not appealable to the Court of

Appeals.  Erikson v. Erikson, 19 Va. App. 389, 391, 451

S.E.2d 711, 713 (1994).  The Court of Appeals therefore

lacked subject matter jurisdiction to entertain the appeal.

For those reasons, we will reverse the judgment of the

Court of Appeals.

_____

     * Senior Justice Compton participated in the hearing
and decision of this case before his death on April 9,
2006.

RELEVANT FACTS AND PROCEEDINGS

The appellee, Courtenay Munford Lewis, filed a bill of complaint in the Circuit Court of Powhatan County in March 2004. In that pleading, she sought a divorce a vinculo matrimonii from the appellant, Thomas Randolph Lewis, and an equitable distribution award. Thomas answered the bill of complaint and denied that the parties are married. He also filed a cross-bill for annulment of the marriage under Code §§ 20-38.1(1) and -89.1.[1] Thomas alleged that his marriage with Courtenay was void on the grounds that, at the time of their marriage on March 1, 1976, Courtenay "was then married to and not validly divorced from Frederick Latimer Wells, whom she had married on July 6, 1963."

Courtenay subsequently filed a motion in limine to preclude Thomas from introducing into evidence certain documents pertaining to her divorce from her former husband. She asserted that Thomas lacked standing to attack the validity of a September 25, 1975 divorce decree between her and Wells entered by the Circuit Court of the City of Richmond. Thus, Courtney claimed that Thomas could

---

[1] In pertinent part, Code § 20-38.1 prohibits "[a] marriage entered into prior to the dissolution of an earlier marriage of one of the parties." Pursuant to Code § 20-89.1(a), a marriage "alleged to be void or voidable for any of the causes mentioned in § . . . 20-38.1 . . . shall be decreed void by a decree of annulment."

2

not introduce into evidence, with regard to either the divorce or the annulment, a decree of divorce entered on August 30, 1979 by the Circuit Court of Powhatan County in a suit styled Courtenay Munford Wells a/k/a Courtenay Munford Lewis against Frederick L. Wells, nor could he introduce the bill of complaint that she filed in that 1979 proceeding.[2]

During a hearing on the motion in limine, Courtenay orally moved the circuit court to dismiss the cross-bill for annulment. After considering the parties' memoranda and argument, the circuit court concluded that Thomas lacked standing to attack Courtenay's 1975 decree of divorce and thus granted both the motion in limine and the motion to dismiss the cross-bill for annulment.

Thomas appealed the circuit court's judgment to the Court of Appeals of Virginia. The only question Thomas presented to the Court of Appeals was "[w]hether the trial court erred in dismissing the [c]ross-[b]ill for [a]nnulment and ruling that the marriage between the parties was valid and not void ab initio." The Court of

---

[2] In the 1979 bill of complaint filed in the Circuit Court of Powhatan County, Courtenay alleged that the previous decree granting a divorce between her and Wells, entered in 1975 by the Circuit Court of the City of Richmond, was "null and void for lack of jurisdiction."

Appeals, however, asked the parties to also address whether the circuit court's dismissal of the cross-bill was an appealable order.  Lewis, slip op. at 3.

With regard to that question, the Court of Appeals concluded that the circuit court, "[b]y holding that [Thomas] cannot attack [Courtenay's] former marriage and by dismissing his suit for annulment, [had,] by implication, determined that a valid marriage exists between [Thomas and Courtenay]."  Id., slip op. at 3-4.  The circuit court's holding, according to the Court of Appeals, "respond[ed] to the chief object of the suit because it determine[d] the status of the parties' marriage" and thus "adjudicate[d] the principles of a cause."  Id.

In deciding that the decree dismissing the cross-bill was appealable, the Court of Appeals distinguished its decision in Erikson.  There, the trial court entered a decree finding that the parties' marriage was valid.  19 Va. App. at 390, 451 S.E.2d at 712.  The decree did not grant or deny a divorce, spousal support, or any other relief.  Id. at 390-91, 451 S.E.2d at 712.  The Court of Appeals concluded that the ruling that the parties were validly married did not "adjudicate the principles of a

Courtenay filed the 1979 bill of complaint after her marriage to Thomas.

4

cause" because the ruling did not determine whether a divorce would be granted or upon what grounds, nor did it "determine the rules or methods by which the ultimate decision in the divorce [would] be adjudicated, thereby requiring only the application of those principles to the facts of the case to decide the issues." Id. at 391, 451 S.E.2d at 713. Thus, the Court of Appeals concluded that the interlocutory decree in Erikson was not appealable under former Code § 17-116.05(4) (now Code § 17.1-405(4)) and that the Court of Appeals was therefore without jurisdiction to entertain the appeal. Id. at 391-92, 451 S.E.2d at 713. Because the interlocutory decree presently at issue actually dismissed a cross-bill for annulment whereas the interlocutory decree in Erikson merely held that the parties' marriage was valid, the Court of Appeals in the case before us concluded that Erikson is factually distinguishable and not controlling. Lewis, slip op. at 4.

Thomas then petitioned for an appeal to this Court. Concluding that the decision of the Court of Appeals involved a matter having significant precedential value, see Code §§ 17.1-410(B) and -411, we awarded Thomas this appeal. Contrary to the position that he asserted before the Court of Appeals, Thomas now claims that the Court of Appeals erred in deciding that the circuit court's order

5

dismissing the cross-bill for annulment is an appealable interlocutory order under Code § 17.1-405(4)(ii).  That assignment of error frames the dispositive issue before us.

ANALYSIS

"The Court of Appeals of Virginia is a court of limited jurisdiction."  Canova Elec. Contracting, Inc. v. LMI Ins. Co., 22 Va. App. 595, 599, 471 S.E.2d 827, 829 (1996).  Unless a statute confers subject matter jurisdiction to that court over a class of appeals, the Court of Appeals is without authority to review an appeal.  Id.  As pertinent to the case before us, the provisions of Code § 17.1-405 grant subject matter jurisdiction to the Court of Appeals over "[a]ny final . . . decree of a circuit court involving . . . [a]ffirmance or annulment of a marriage; . . . divorce; [and a]ny interlocutory decree . . . entered in [such] cases . . . adjudicating the principles of a cause."  Code §§ 17.1-405(3)(a), (b) and -405(4)(ii).

Relying on Equitable Life Assurance Soc'y v. Wilson, 110 Va. 571, 573, 66 S.E. 836, 837 (1910), Courtenay argues that the cross-bill was a pleading that alleged new facts and prayed for affirmative relief, and would therefore remain for disposition if the bill of complaint were dismissed.  It must then follow, according to Courtenay,

6

that the decree dismissing the cross-bill was an appealable order as the " 'chief object' of [Thomas'] suit was for the court to determine the status of" his marriage to Courtenay. She also asserts that all the cases cited by Thomas, including Erikson, are inapposite because in each case only a bill of complaint for divorce had been filed.

Courtenay's argument, as well as the decision of the Court of Appeals, turns on the fact that Thomas filed a cross-bill seeking affirmative relief in the nature of an annulment.

> The primary purposes of a cross-bill are to obtain affirmative relief on behalf of the defendant . . . filing such a bill, and to obtain in the course of one proceeding a full and complete determination of all issues which arise out of, or which are connected with, the subject matter of the original bill.

Brewer v. Brewer, 199 Va. 626, 628, 101 S.E.2d 516, 518 (1958); cf. Shevel's, Inc. v. Southeastern Assocs., Inc., 228 Va. 175, 184, 320 S.E.2d 339, 344 (1984) (if a defendant presents a claim for affirmative relief in a defensive pleading, the trial court may in its discretion treat the answer as a cross-bill). Because Thomas sought affirmative relief in the cross-bill, as opposed to filing a merely defensive cross-bill, it is correct, as Courtenay asserts, that dismissal of the original bill of complaint would not necessarily result in a dismissal of the cross-

7

bill.  Equitable Life Assurance Soc'y, 110 Va. at 573-74, 66 S.E. at 837.  Even so, neither the fact that Thomas used a cross-bill to seek affirmative relief in the nature of an annulment nor the tenets associated with a cross-bill resolve the issue before us.  We must, instead, apply the well-established principles setting the parameters of an interlocutory order that adjudicates the principles of a cause.

Many years before the establishment of the Court of Appeals of Virginia, this Court, in addressing our own jurisdiction, see Code § 3454 (1887), recognized the difficulty in defining the phrase "adjudicating the principles of [a] cause" in such a manner as to fit every case, but we, nevertheless, stated

> it must mean that the rules or methods by which the rights of the parties are to be finally worked out have been so far determined that it is only necessary to apply these rules or methods to the facts of the case in order to ascertain the relative rights of the parties with regard to the subject matter of the suit.

Lancaster v. Lancaster, 86 Va. (11 Hans.) 201, 204-05, 9 S.E. 988, 990 (1889); accord Lee v. Lee, 142 Va. 244, 252-53, 128 S.E. 524, 527 (1925); Vinson v. Vinson, 41 Va. App. 675, 683, 588 S.E.2d 392, 396 (2003); Pinkard v. Pinkard, 12 Va. App. 848, 851, 407 S.E.2d 339, 341 (1991).  The phrase "refers to principles which affect the subject

8

matter of the litigation and the rules by which the rights of the parties to the suit are to be finally determined." Thrasher v. Lustig, 204 Va. 399, 402, 131 S.E.2d 286, 288 (1963).

The subject matter of the litigation in the suit filed by Courtenay and the cross-bill filed by Thomas is a domestic relations dispute.  As the Court of Appeals noted in Wells v. Wells, 29 Va. App. 82, 509 S.E.2d 549 (1999), "[a]n interlocutory order that adjudicates the principles of a domestic relations dispute 'must respond to the chief object of the suit,' . . . which is to determine the status of the parties' marriage and the custody of the parties' children, and, if appropriate, to award spousal and child support."  Id. at 86, 509 S.E.2d at 551; see also Erikson, 19 Va. App. at 391, 451 S.E.2d at 713 (an "interlocutory order that adjudicates the principles in a divorce case must 'respond to the chief object of the suit which [is] to secure a divorce'") (quoting Pinkard, 12 Va. App. at 352, 407 S.E.2d at 341-42).

In the cross-bill, Thomas alleged that, at the time he and Courtenay were married, she was not validly divorced from her former husband.  Based on his allegations, the question whether Thomas was entitled to an annulment turned on the validity of Courtenay's 1975 divorce.  See Code

§ 20-38.1 (a marriage entered into prior to the dissolution of a prior marriage of one of the parties is prohibited). Relying on this Court's decision in George v. King, 208 Va. 136, 138, 156 S.E.2d 615, 616-17 (1967), the circuit court, however, concluded that Thomas lacked standing to attack the validity of Courtenay's 1975 divorce from her former husband. For that reason, the circuit court dismissed the cross-bill.

The circuit court's decree did not "respond to the chief object" of the domestic relations dispute nor did it determine the "'principles' that are necessary to adjudicate the cause." Erikson, 19 Va. App. at 391, 451 S.E.2d at 713. It did not determine the status or validity of the parties' marriage; it did not award spousal support or make an equitable distribution of marital assets. Instead, the circuit court merely determined that Thomas could not obtain an annulment by attacking the validity of Courtenay's 1975 divorce. Thus, the interlocutory decree dismissing the cross-bill for annulment did not "determine the rights of the parties" and it would not "of necessity affect the final order in the case." Pinkard, 12 Va. App. at 851, 407 S.E.2d at 341; see also Erikson, 19 Va. App. at 391, 451 S.E.2d at 712-13 (decree ruling that the parties were validly married did not adjudicate the principles of a

10

cause because it did not determine whether a divorce would be granted or upon what grounds).  Unlike the decree at issue, an interlocutory decree that adjudicates the principles of a cause "must 'determine the rights of the parties' and 'would of necessity affect the final order.' " Pinkard, 12 Va. App. at 851, 407 S.E.2d at 341; accord Erikson, 19 Va. App. at 391, 451 S.E.2d at 713.  " '[T]he mere possibility' that an interlocutory decree 'may affect the final decision in the trial does not necessitate an immediate appeal.' "  Polumbo v. Polumbo, 13 Va. App. 306, 307, 411 S.E.2d 229, 229 (1991) (quoting Pinkard, 12 Va. App. at 853, 407 S.E.2d at 342).

In contrast, a decree entered in the domestic relations dispute in Crowder v. Crowder, 125 Va. 80, 83, 99 S.E. 746, 747 (1919), did adjudicate the principles of a cause.  There, the wife filed a suit for divorce on the grounds of desertion and also asked the trial court to set aside as fraudulent the sale of certain real estate and "a stock of shoes" by her husband to his brothers.  Id.  In the decree, which was the subject of the appeal to this Court, the trial court had not granted the divorce, but it had found that the husband's brothers were not guilty of fraud in the purchases from the husband.  Id.  In holding that the decree appealed from, while not final, did

11

nonetheless adjudicate the principles of the cause, we

stated:

> This [decree] was an adjudication of all the questions raised by the complainant's bill. She claimed that she was entitled to a divorce on the ground of desertion by her husband, and this claim was in effect sustained. She further claimed that the sales from her husband to his brothers was [sic] in fraud of her marital rights, and that she had the right to have them set aside and the property subjected to her demands. This claim was overruled, and the sales declared to be free from fraud.

Id.

Unlike the decree in Crowder that did determine the

rights of the parties and the principles necessary to

adjudicate the cause, the circuit court's interlocutory

decree dismissing Thomas' cross-bill did not do so. Thus,

the decree was not appealable under Code § 17.1-405(4)(ii).[3]

CONCLUSION

For the reasons stated, we conclude that the Court of

Appeals erred. Since the interlocutory decree before us

did not adjudicate the principles of a cause and was

therefore not appealable, the Court of Appeals lacked

---

[3] To the extent that Courtenay suggests that the decree was a final order and thus appealable on that basis, see Code § 17.1-405(3), we find no merit in that argument. See Brooks v. Roanoke County Sanitation Auth., 201 Va. 934, 936, 114 S.E.2d 758, 760 (1960) ("A decree is final only when it disposes of the whole subject, gives all the relief that is contemplated and leaves nothing to be done by the court in the cause except its ministerial execution.").

12

subject matter jurisdiction to entertain the appeal.[4]  Thus,

we will reverse the judgment of the Court of Appeals of

Virginia and dismiss the appeal.[5]

*Reversed and dismissed*.

---

[4] Whether the dismissal of the cross-bill for annulment was appealable under the "severable interests" doctrine has not been raised in this appeal.  See generally Safeway, Inc. v. DPI Midatlantic, Inc., 270 Va. 285, 619 S.E.2d 76 (2005); Maitland v. Allen, 267 Va. 714, 718 n.2, 594 S.E.2d 918, 920 n.2 (2004); Thompson v. Skate Am., Inc., 261 Va. 121, 540 S.E.2d 123 (2001); Dalloul v. Agbey, 255 Va. 511, 515 n.*, 499 S.E.2d 279, 282 n.* (1998); Hinchey v. Ogden, 226 Va. 234, 236-37 & n.1, 307 S.E.2d 891, 892 & n.1 (1983); Wells v. Whitaker, 207 Va. 616, 628-29, 151 S.E.2d 422, 432-33 (1966).  We express no opinion on that issue.

[5] Our decision today allows Thomas to take a position before this Court that is inconsistent with, and contrary to, his position before the Court of Appeals.  We do not condone such behavior, but the issue before us involves the subject matter jurisdiction of the Court of Appeals which cannot be created by the action of a party.  Furthermore, the issue of subject matter jurisdiction can always be reviewed by this Court sua sponte.  See Board of Supervisors of Fairfax County v. Board of Zoning Appeals of Fairfax County, 271 Va. 336, 344, 626 S.E.2d 374, 379 (2006).
 The present disposition is without prejudice to Thomas' option to challenge the circuit court's ruling with respect to his annulment claim in a future appeal after a final judgment is entered.  See Smith v. Woodlawn Constr. Co., 235 Va. 424, 429, 368 S.E.2d 699, 702 (1988) (recognizing the general rule that an "adverse interlocutory adjudication may be the subject of appeal from the final adjudication"); Alliance to Save the Mattaponi v. Virginia Marine Res. Comm'n, 43 Va. App. 724, 726-27 & n.2; 601 S.E.2d 684, 685 & n.2 (2004).
 In light of our decision, it is not necessary to address the remaining assignment of error.