COURT OF APPEALS OF VIRGINIA


Present:   Judges Kelsey, Beales and Senior Judge Annunziata
Argued at Chesapeake, Virginia


RABHA CHAPLAIN
                                                           OPINION BY
v.        Record No. 2582-08-1           JUDGE ROSEMARIE ANNUNZIATA
                                                       SEPTEMBER 8, 2009
BILLY W. CHAPLAIN


            FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
                              Frederick B. Lowe, Judge

         A. Bartlett Keil (Mark R. Baumgartner; Anne C. Lahren; Pender &
         Coward, P.C., on briefs), for appellant.

         James A. Evans (Evans & Bryant, PLC, on briefs), for appellee.


         Rabha Chaplain (wife) appeals the trial court's ruling that the parties' premarital agreement

is valid and enforceable.  Wife argues that the trial court erred in (1) ruling that the premarital

agreement was not unconscionable on its face; (2) failing to consider the attendant facts and

circumstances to determine the validity of the premarital agreement; (3) finding that the premarital

agreement is enforceable pursuant to the Virginia Premarital Agreement Act; and (4) concluding

that wife voluntarily executed the premarital agreement.  The trial court order granting husband's

motion to strike from which the appeal is taken is interlocutory in nature and gives rise to a

threshold jurisdictional question that we must first address.  Because the parties did not brief or

argue whether the order was appealable, this Court, *sua sponte*, directed the parties to file

supplemental briefs addressing the question:  Does this Court have jurisdiction pursuant to Code

§ 17.1-405 to review the trial court's interlocutory decree concerning the validity of a premarital

agreement?  See Lewis v. Lewis, 271 Va. 520, 628 S.E.2d 314 (2006) (holding that the Court of

Appeals lacked jurisdiction to hear an appeal of an interlocutory decree dismissing a cross-bill

for annulment of the marriage because it did not adjudicate the principles of the cause), and

Webb v. Webb, 13 Va. App. 681, 414 S.E.2d 612 (1992) (holding that the Court of Appeals lacked jurisdiction to hear an appeal of an interlocutory decree holding that a separation agreement was invalid because the ruling did not adjudicate the principles of the cause).

For the reasons that follow, we find the interlocutory order is appealable. Upon review, we reverse the trial court's rulings and remand the matter for further proceedings consistent with this opinion.

I.

Whether the Interlocutory Order Entered in This Case is Appealable

A. Background

Wife and Billy W. Chaplain (husband) married on September 4, 1997. Husband was born and lived in Virginia Beach for seventy-seven years. Wife was born and lived in Morocco until the summer of 1996, when she first came to the United States to visit her brother. Within three weeks of her arrival, wife met husband and, within two months, they became engaged.

On or about June 26, 1997, husband retained an attorney to draft a premarital agreement, which wife executed. The premarital agreement provided that, in the event of a divorce, each party waived their interest in the other party's property, their right to inherit from the other, their right to equitable distribution, spousal support, retirement and life insurance benefits, and attorney's fees and costs. The only asset wife was entitled to under the agreement was the sum of $100,000, on the condition she and husband were married and living together at the time of his death.

On June 17, 2008, the trial court held a hearing to address the validity of the premarital agreement. It granted husband's motion to strike, concluding the premarital agreement was not

unconscionable on its face and was enforceable. Wife objected to the trial court's ruling and timely noted her appeal.

## B. Analysis

Absent subject matter jurisdiction, this Court cannot address and resolve the merits of a claim on appeal. de Haan v. de Haan, 54 Va. App. 428, 435, 680 S.E.2d 297, ___ (2009) (citing Comcast of Chesterfield County, Inc. v. Bd. of Supervisors of Chesterfield County, 277 Va. 293, 299, 672 S.E.2d 870, 872 (2009)). The issue of subject matter jurisdiction may be raised *sua sponte* by the Court, as we have done in this case. Earley v. Landsidle, 257 Va. 365, 371, 514 S.E.2d 153, 156 (1999) (citations omitted).

Code § 17.1-405(4) establishes the parameters of the Court's appellate authority to review an interlocutory order and limits that authority to reviewing "[a]ny interlocutory decree or order entered in any of the cases listed in this section (i) granting, dissolving, or denying an injunction or (ii) adjudicating the principles of a cause."

For an interlocutory decree to adjudicate the principles of a cause,

> the decree must determine that "the rules or methods by which the rights of the parties are to be finally worked out have been so far determined that it is only necessary to apply those rules or methods to the facts of the case in order to ascertain the relative rights of the parties, with regard to the subject matter of the suit."

Pinkard v. Pinkard, 12 Va. App. 848, 851, 407 S.E.2d 339, 341 (1991) (quoting Lee v. Lee, 142 Va. 244, 252-53, 128 S.E. 524, 527 (1925)).

> In order to adjudicate the principles of a cause, a decree must decide an issue that "would of necessity affect the final order in the case." Pinkard, 12 Va. App. at 851, 407 S.E.2d at 341. The decree must "determine the rules by which the court will determine the rights of the parties." Id.

Polumbo v. Polumbo, 13 Va. App. 306, 307, 411 S.E.2d 229, 229 (1991).

In Crowder v Crowder, 125 Va. 80, 83, 99 S.E. 746, 747 (1919), the Virginia Supreme Court concluded the interlocutory decree entered in a domestic relations case had "adjudicated the principles of a cause" and was appealable.  In Crowder, wife filed for divorce on the grounds of desertion and also asked the trial court to set aside as fraudulent the sale of certain property that husband had made to his brothers.[1]  The divorce was uncontested, and wife's petition was limited to seeking a court order setting aside the sales as the predicate for an alimony award.  No other issue in the case was raised before the trial court, including wife's petition for divorce.  Nor was an issue other than wife's petition to set aside the husband's sales to his brothers decided by the trial court.  On those facts, the Supreme Court concluded the interlocutory decree was "an adjudication of all the questions raised by the complainant's bill," and held the interlocutory decree was appealable.[2]  Id.

We, likewise, find the interlocutory order before the Court is an appealable interlocutory order.  The parties stipulated in both the pretrial order governing the proceedings and in their pretrial conference briefs that the grounds for the divorce were not contested and identified as the only issue to be decided by the trial court the validity of the parties' premarital agreement. The premarital agreement at issue governs how the entirety of husband's property is to be divided and precludes the parties' exercise of their rights to equitable distribution, spousal support, inheritance, retirement and life insurance benefits, attorney's fees, and costs.  In addressing the validity and enforceability of the premarital agreement, the trial court decided "the rules by which [it] will determine the rights of the parties," and which will "of necessity affect the final

---

[1] In Crowder, husband never appeared in the trial court or the appellate court; only husband's brothers were represented in the appeal.

[2] The Supreme Court found that wife's petition for divorce had, "in effect," been granted.

order in the case." Pinkard, 12 Va. App. at 851, 407 S.E.2d at 341. In short, the trial court's ruling adjudicated the principles of the cause.[3]

To be sure, appeals from interlocutory orders are not favored in the law. "'By their nature, interlocutory appeals are disruptive, time-consuming, and expensive.'" de Haan, 54 Va. App. at 441, 680 S.E.2d at ___ (quoting Waste Mgmt. Holdings, Inc. v. Mowbray, 208 F.3d 288, 294 (1st Cir. 2000)).

> "They 'invite inefficiency, redundancy, and delay.'" Birmingham Fire Fighters Ass'n 117 v. Jefferson County, 280 F.3d 1289, 1295 (11th Cir. 2002)).
>
>   *  *  *  *  *  *  *
>
> [S]ee also Lienhart v. Dryvit Sys., 255 F.3d 138, 145 (4th Cir. 2001) (noting the "judicial diseconomy of permitting routine interlocutory appeals"); Blair v. Equifax Check Servs., Inc., 181 F.3d 832, 835 (7th Cir. 1999) (stating the fact that an interlocutory appeal "interrupts the progress of a case and prolongs its

---

[3] Cf. Lewis v. Lewis, 271 Va. 520, 628 S.E.2 314 (2006). In Lewis, wife filed a bill of complaint seeking a divorce and equitable distribution. Husband denied that the parties were married and filed a cross-bill for annulment, which was dismissed by the trial court on wife's motion. The Supreme Court held that the interlocutory order dismissing the cross-bill for annulment was not appealable because the trial court's order "did not 'respond to the chief object' of the domestic relations dispute nor did it determine the '"principles" that are necessary to adjudicate the cause.'" Id. at 527, 628 S.E.2d at 318 (quoting Erikson v. Erikson, 19 Va. App. 389, 391, 451 S.E.2d 711, 713 (1994)). It found that the trial court's order "merely determined that [husband] could not obtain an annulment by attacking the validity of [wife's] 1975 divorce." Id. It did not "determine the rights of the parties [with respect to wife's bill for divorce]" and thus it would not "of necessity affect the final order in [the] case." Id. (quoting Pinkard, 12 Va. App. at 851, 407 S.E.2d at 341).

 Cf. Polumbo, 13 Va. App. at 307, 411 S.E.2d 230. In Polumbo, we held that an interlocutory order declaring a premarital agreement invalid "may affect the final decision but will not of necessity do so" and is not appealable because such an order does not determine whether the wife would ultimately receive an award for spousal support or a monetary award. Id. In Webb v. Webb, 13 Va. App. 681, 683, 414 S.E.2d 612, 613 (1992) (quoting Weizenbaum v. Weizenbaum, 12 Va. App. 899, 903, 407 S.E.2d 37, 39 (1991)), this Court held that the interlocutory order, which found that the parties' separation agreement was invalid, was not appealable because "'[t]he matter was still in the breast of the court and "subject to alteration and amendment" by the judge before entering an appealable order.'" The trial court had to rule on the remaining issues, including grounds for divorce and equitable distribution. Id.

disposition" represents "a principal reason why interlocutory appeals are so disfavored").

Id.

As we noted in de Haan, however, it is indisputable that the General Assembly has provided that orders "adjudicating the principles of a cause" may be appealed. Id. (citing Code § 17.1-405(4)). See Ryan's Adm'r v. McLeod, 73 Va. (32 Gratt.) 367, 380 (1879) ("unnecessary expenses and litigation would be avoided by permitting appeals from interlocutory decrees in certain classes of cases"). Here, where the evidence of the divorce is uncontested, and the only issue before the trial court was whether the parties' property rights upon divorce were governed by their premarital agreement, "'the rules or methods by which the rights of the parties are to be finally worked out have been . . . determined'" by the trial court. Pinkard, 12 Va. App. at 851, 407 S.E.2d at 341 (quoting Lee, 142 Va. at 252-53, 128 S.E. at 527). Accordingly, under the particular facts of this case, we find the interlocutory order is subject to review for error on appeal. Indeed, because we find the court erred in determining that the premarital agreement is valid and enforceable, judicial economy and efficiency would be poorly served, if served at all, by a dismissal of this appeal of the trial court's error in determining the "rules" that will govern its final order.

II.

Whether the Premarital Agreement is Unconscionable

A. Background

On appeal, the Court, in reviewing the ruling to strike a plaintiff's evidence, "must view the evidence and all reasonable inferences to be drawn therefrom in the light most favorable to the plaintiff." Economopoulos v. Kolaitis, 259 Va. 806, 814, 528 S.E.2d 714, 719 (2000) (citing West v. Critzer, 238 Va. 356, 357, 383 S.E.2d 726, 727 (1989)).

The evidence, stated in the light most favorable to the wife, establishes that wife was born and lived in Morocco until the summer of 1996, when she first came to the United States to visit her brother. Wife's native language was Arabic, and she also spoke French and Spanish. When husband first met wife, she spoke English with a broken accent and she relied on translators for oral and written communication in English. Addressing her proficiency in English, husband testified that she could read the English menu in a Chinese restaurant.

Within three weeks of her arrival, wife met husband and, within two months, they became engaged. On or about June 26, 1997, husband retained an attorney to draft a premarital agreement. On August 13, 1997, husband brought wife to his attorney's office to sign the premarital agreement and told her that she had to sign a "marriage paper." Wife thought that she was signing a "paper for marriage . . . like [a] license or something." Wife was not provided with a copy of the agreement to review beforehand. Nor did she receive a copy of the agreement once she signed it. Although wife's ability in English had improved since her arrival in the United States, at the time of the marriage in 1997, she continued to rely on translators to communicate. She signed the agreement without reading it. Counsel did not represent wife when she signed the agreement, nor had an attorney acting on her behalf been asked to review it. She testified that she signed the agreement because she trusted husband.

Pursuant to the premarital agreement, each party waived their interest in all property rights of the other, including spousal support, the rights to equitable distribution, the right to inherit from the other, the right to the other's life insurance and retirement benefits, and attorney's fees and costs. The only asset husband provided to wife under the agreement was the sum of $100,000, provided she and husband were married and living together at the time of his death.

The agreement did not include a disclosure of each party's assets and liabilities. At the time of the execution of the agreement, and at the time of the hearing, husband's net worth was approximately twenty million dollars. Prior to signing the agreement, husband told wife that he was a "poor man" and "didn't have the money much."

The trial court granted husband's motion to strike wife's evidence and found the agreement was not unconscionable on its face and that it was enforceable. The court explained "there may have been a lack of understanding perhaps or a lack of taking the opportunity, shall we say, to review and/or understand the document, but as far as voluntariness is concerned, the Court determines it was voluntarily executed." Among the circumstances it considered in arriving at its conclusions were the parties' " relative age, [and] the fact that Mr. Chaplain accumulated the bulk, if not all, of his estate prior to their being married."

### B. Analysis

The standard that governs the trial court's review of the plaintiff's evidence before granting a motion to strike the case is well settled.

> That standard requires the trial court to accept as true all the evidence favorable to the plaintiff as well as any reasonable inference a jury might draw therefrom which would sustain the plaintiff's cause of action. The trial court is not to judge the weight and credibility of the evidence, and may not reject any inference from the evidence favorable to the plaintiff unless it would defy logic and common sense.

Austin v. Shoney's, Inc., 254 Va. 134, 138, 486 S.E.2d 285, 287 (1997) (citations omitted). See also Upper Occoquan Sewage Auth. v. Blake Constr., 266 Va. 582, 590 n.6, 587 S.E.2d 721, 725 n.6 (2003); Polyzos v. Cotrupi, 264 Va. 116, 121, 563 S.E.2d 775, 777 (2002); Claycomb v. Didawick, 256 Va. 332, 335, 505 S.E.2d 202, 204 (1998) (noting that the same standard applies in bench trials).

Viewing the evidence in that light, and applying the two-step test set forth in Galloway v. Galloway, 47 Va. App. 83, 92, 622 S.E.2d 267, 271 (2005),[4] we conclude that the trial court erred in granting the motion to strike because wife met her burden to make a *prima facie* showing of unconscionability.

> Historically, a bargain was unconscionable in an action at law if it was "'such as no man in his senses and not under delusion would make on the one hand, and as no honest and fair man would accept on the other.'" Restatement (Second) of Contracts § 208 cmt. b (quoting Hume v. United States, 132 U.S. 406, 411 (1889)). If inadequacy of price or inequality in value are the only indicia of unconscionability, the case must be extreme to justify equitable relief. Smyth Bros. v. Beresford, 128 Va. 137, 169-70, 104 S.E. 371, 381-82 (1920).

Derby v. Derby, 8 Va. App. 19, 28, 378 S.E.2d 74, 78-79 (1989). "The inequality must be so gross as to shock the conscience." Smyth Bros., 128 Va. at 170, 104 S.E. at 382. "[G]ross disparity in the value exchanged is a significant factor in determining whether oppressive influences affected the agreement to the extent that the process was unfair and the terms of the resultant agreement unconscionable." Derby, 8 Va. App. at 28, 378 S.E.2d at 79 (citation omitted).

The evidence of unconscionability is ample. Under the terms of the agreement, husband would receive his entire net worth of approximately twenty million dollars, and wife would receive nothing, save the right to $100,000 upon husband's death and provided husband and wife were married and living together at that time. Wife had no source of income, having left her secretarial job in Morocco when she married husband, and she remained unemployed in the United States during the course of the marriage.

---

[4] There is a two-step test that courts must apply in determining whether an agreement is unconscionable: "1) a gross disparity existed in the division of assets and 2) overreaching or oppressive influences." Galloway, 47 Va. App. at 92, 622 S.E.2d at 271 (citations omitted).

In addition to a showing of gross disparity, "[c]ourts must view the apparent inequity in light of other attendant circumstances to determine whether the agreement is unconscionable and should be declared invalid." Galloway, 47 Va. App. at 92, 622 S.E.2d at 271 (citing Derby, 8 Va. App. at 29, 378 S.E.2d at 79).

> "When the accompanying incidents are inequitable and show bad faith, such as concealments, misrepresentations, undue advantage, oppression on the part of the one who obtains the benefit, or ignorance, weakness of mind, sickness, old age, incapacity, pecuniary necessities, and the like, on the part of the other, these circumstances, combined with inadequacy of price, may easily induce a court to grant relief, defensive or affirmative."

Derby, 8 Va. App. at 28-29, 378 S.E.2d at 79 (quoting Pomeroy, Equity Jurisprudence § 928 (5th ed. 1941)).

Here, wife's evidence of the circumstances surrounding the execution of the agreement, when viewed in her favor, bespeaks unfairness and inequality. See id. at 28, 378 S.E.2d at 79. Wife testified she had limited knowledge of English, that she did not and could not read it, and that the document was handed to her in husband's attorney's office, opened to the signature page. She further testified that husband did not at any time discuss the terms of the agreement with her nor explain it would govern the division of property in the event of a divorce. Instead, she stated he represented the agreement to be a "marriage paper." Wife further testified that husband did not provide a copy of the agreement to her for her review or for her attorney to review, either before or after she signed it. Wife was not represented by counsel at the execution of the document.[5] In his testimony, husband denied these allegations and countered wife's

---

[5] Whether the absence of independent legal advice of counsel is a factor to be considered in determining whether a premarital agreement is unconscionable is not addressed by the Virginia Premarital Agreement Act. However, the Comment to Section 6 of the Uniform Premarital Agreement Act states: "Nothing in [this section] makes the absence of assistance of independent legal counsel a condition for the unenforceability of a premarital agreement. However, the lack of that assistance may well be a factor in determining whether the [unconscionability] conditions stated in [this section] may have existed." Virginia adopted in

testimony.[6] Which of these two conflicting versions of the facts should be believed is entirely a question of fact for the trial court to resolve on remand.

The wife's *prima facie* case of unconscionability is, thus, rooted in the gross disparity between the value received by husband and wife and in the inequities and oppressive circumstances surrounding the execution of the agreement. Cf. Galloway, 47 Va. App. at 93, 622 S.E.2d at 272 (no evidence of oppressive or overreaching conduct by the husband because husband and wife discussed the terms of the agreement before husband's attorney drafted the agreement; husband brought a copy of the agreement to wife the night before it was executed; wife read the agreement; husband told wife that she could have an attorney review it; wife voluntarily went with husband to sign the agreement; wife was not under any duress when she signed the agreement).

We find the trial court erred in determining that wife failed to establish a *prima facie* case that the premarital agreement was unconscionable.

---

large part the Uniform Premarital Agreement Act as the Virginia Premarital Agreement Act. See Peter N. Swisher, et al., Family Law: Theory, Practice, and Forms § 3:4, at 69 (2009 ed.).

[6] Husband testified that from "[t]he first day I met her, she could talk as good as you could, but she had [a] broken accent." App. 33. When they dined out, husband claimed, "she always read the menu to me." App. 33. He added that she "read the newspaper every day" and "read anything she wanted." App. 34. "She wrote letters and everything before she got married to me," husband contended. App. 34. He further claimed wife "saw [the agreement] up there at Grover Wright's [husband's attorney] office when we were there," husband stated. App. 28. "She could go see it anytime she wanted. . . . I told her to go see it." App. 28-29; see also App. 19 ("I told her to read it . . . ."). When asked if anyone explained the agreement to wife "before she signed it," husband replied, "Yeah." App. 31. Grover Wright and John Richardson explained the agreement to her, husband continued. App. 31. Grover Wright, husband testified, "explained everything to her." App. 32. "She read it and then when [Wright] got through, she said, where do I put my name at." App. 32-33. Husband also testified, "I told her I didn't have the money much. I had a lot of stuff tied up in different businesses." App. 25. But, he also stated that wife knew, prior to the marriage, that he owned the apartment building her friend lived in, App. 35, and that she was likewise aware of husband's various "horse farms." App. 35-36.

III.

Whether the Premarital Agreement is Enforceable

Pursuant to the Premarital Agreement Act, a premarital agreement is not enforceable if, in addition to being found unconscionable when it was executed, the individual challenging its enforceability establishes either (1) she did not execute the agreement voluntarily, or (2) she was not provided "a fair and reasonable disclosure of the property or financial obligations of the other party; and did not voluntarily and expressly waive, in writing, any right to disclosure of the property." Code § 20-151(A). Wife contends the trial court erred in finding she failed to meet her burden of establishing *prima facie* that the agreement was unenforceable. We agree.

Husband does not dispute that he failed to disclose his net worth of approximately twenty million dollars to wife prior to her execution of the agreement. Husband argues that, since most of his wealth was accumulated prior to the marriage, that it was his separate property and not subject to equitable distribution. However, the statute requires that he disclose his assets and liabilities to wife prior to her signing the agreement. Id. Moreover, the statute requires that wife waive further disclosure "in writing" and "before the execution of the agreement." Wife did not do so.

Accordingly, we find that the trial court erred in finding the premarital agreement enforceable and granting husband's motion to strike. Wife established *prima facie* that the agreement was unenforceable, having presented evidence that it was unconscionable and, further, having established that husband did not provide the necessary disclosures to her prior to the execution of the agreement and that she did not "voluntarily and expressly waive, in writing, any

right to disclosure of the property." Id.[7]  Accordingly, we hold that the trial court erred in granting husband's motion to strike.

IV.

Conclusion

We hold that the interlocutory order before this Court is an appealable interlocutory order.  We further hold that the trial court erred in finding wife had not established a *prima facie* case that the agreement was unenforceable pursuant to the Premarital Agreement Act and granting husband's motion to strike.  Therefore, we reverse and remand the case to the trial court for further proceedings consistent with this opinion.

Reversed and remanded.

---

[7] Since husband did not provide a financial disclosure or obtain wife's written waiver of her right to disclosure of his property, pursuant to Code § 20-151(A)(2), we need not address wife's contention that the trial court erred in finding she voluntarily executed the agreement.