COURT OF APPEALS OF VIRGINIA

Present: Judges Petty, Athey and Senior Judge Clements

UNPUBLISHED

ANA MARIA SANTA MARIA AREBALO

MEMORANDUM OPINION[*]
v.       Record No. 2004-19-4                    PER CURIAM
                                                 JUNE 2, 2020
ADOLFO MEJIA MELENDEZ


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
David Bernhard, Judge

(William Wilkinson; Katherine Martell; First Point Law Group, P.C.,
on brief), for appellant.  Appellant submitting on brief.

(Luis A. Perez, on brief), for appellee.  Appellee submitting on
brief.


        Ana Maria Santa Maria Arebalo appeals a circuit court order granting Adolfo Mejia

Melendez's motion to strike and dismissing her complaint for annulment.  Arebalo argues that the

circuit court erred by sustaining the motion to strike because the parties' admissions and the

evidence supported her argument for annulment.  She also asserts that the circuit court erred in

excluding the Bolivian marriage certificate and accompanying documents as not properly

authenticated under Code § 8.01-389(A1) and Virginia Rule of Evidence 2.902(2) because "the

documents presented at trial were notarized by the Bolivian clerk of court and both parties had

reasonable opportunity to investigate the accuracy and authenticity of the purported official

records."  Upon reviewing the record and briefs of the parties, we conclude that the circuit court

did not err.  Accordingly, we affirm the decision of the circuit court.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND

"According to well-settled principles of appellate review, when the trial court grants a motion to strike the plaintiff's evidence, we review the evidence on appeal in the light most favorable to the plaintiff." Barnes v. Barnes, 64 Va. App. 22, 26 (2014) (quoting Green v. Ingram, 269 Va. 281, 284 (2005)).

Arebalo and Melendez married on May 17, 2002, and separated on November 1, 2016. On August 21, 2018, Arebalo filed a complaint for annulment and alleged that Melendez was still married to his first wife when he and Arebalo married. Arebalo claimed that a court in Bolivia entered Melendez's final decree of divorce with this first wife on October 31, 2002, after the parties' marriage; therefore, Arebalo argued that her marriage to Melendez was void *ab initio*. Melendez denied Arebalo's assertions and argued that her complaint should be dismissed.[1]

In compliance with the circuit court's scheduling order, the parties filed their witness and exhibit lists. Arebalo's exhibit list included the "[o]riginal certified Bolivian marriage records" and the "[n]otarized translation of Bolivian marriage records." Melendez objected to these exhibits because they were in a foreign language and were neither translated nor properly authenticated.[2]

The parties appeared before the circuit court on October 29, 2019. Arebalo moved to nonsuit the case because she did not have "the entire Bolivian marriage documents translated;" she only had what she "believe[d] [was] the final decree of divorce from his prior wife."

---

[1] Melendez also had filed a counterclaim that if the circuit court granted the annulment, then he requested that the property settlement agreement that the parties previously signed be declared null and void.

[2] Melendez also objected that the documents were not provided to him fifteen days before trial as required by the scheduling order.

Melendez objected to the nonsuit. The circuit court denied Arebalo's motion to nonsuit under Code § 8.01-380(D) because Melendez had filed a counterclaim that could not be adjudicated independently.

Melendez made a motion *in limine* to exclude any "documents in Spanish which have not been translated;" he also repeated his objection that the documents were not authenticated. Arebalo asserted that she had "only translated what we believe is the final divorce decree," but admitted that the translation was not completed in advance or provided in her discovery responses. The circuit court took the motion under advisement and allowed Arebalo to proceed with her case.

Arebalo questioned Melendez about his marriage to his first wife in Bolivia, his move to the United States, and meeting Arebalo in the United States. Melendez testified that in January 2001, he enlisted his father's help to hire a lawyer and file for divorce in Bolivia. In May 2001, Melendez contacted his lawyer to ensure that the divorce was finalized, and the lawyer told him, "Yes. It's completely finished. You can marry. You can do whatever you want to." Melendez's father also told him that the divorce was finalized. On May 17, 2002, Melendez married Arebalo. He said that he had been told that the divorce was finalized before they married and that he had not received any documentation that his divorce was not finalized in 2001. Melendez saw the Bolivian documents for the first time when Arebalo provided them; Melendez did not understand them. Melendez could not confirm that they were accurate documents regarding his marriage and divorce because in "Bolivia, you can do anything. You can pay money, [sic] you can get anything anywhere."

Arebalo confirmed that the parties married in May 2002 and separated in 2016. After their separation, Arebalo obtained Melendez's marriage certificate from the Bolivian embassy.

She hired an attorney, who obtained other records from Bolivia; Arebalo did not go to the Bolivian courts herself to obtain records.

Arebalo attempted to introduce the Bolivian records, but Melendez renewed his objection to the admission of any of the foreign documents because they were not certified as true and accurate copies by an authorized individual. He also stated that he was looking at the documents with the stamp for the first time at the hearing, and Arebalo admitted that she had not provided the stamped documents to him but had informed him earlier that she and her attorney had the original certified copies. Arebalo asserted that the documents were stamped, certified, and signed by the clerk of the court where they were issued and met the requirements of Code § 8.01-389. Arebalo conceded that there was "no statement regarding the truth and authenticity of the documents," but argued that such a statement was not necessary.

The circuit court reviewed the stamp on the documents and Rule 2:902(2) regarding authentication of foreign documents. The circuit court found that because Arebalo had not provided Melendez with the stamped documents, he was unable to investigate the stamp or the authenticity of the documents. The circuit court also examined Code § 8.01-389 and found that the documents did not comply with subsection A1 because they were not marked as "true and accurate." Accordingly, the circuit court found that the documents were not properly authenticated, sustained Melendez's objection, and excluded the documents.

Melendez then moved to strike on the ground that Arebalo had not proven bigamy and could not be awarded an annulment. Before ruling, the circuit court reviewed Code § 20-99(1), which provides that "[n]o divorce, annulment, or affirmation of a marriage shall be granted on the uncorroborated testimony of the parties or either of them." Arebalo argued that the documents, which she acknowledged were not in evidence, corroborated her testimony. The circuit court granted the motion to strike because there was no corroboration for the annulment.

On the same day, the circuit court entered a final order that granted the motion to strike and dismissed the complaint for annulment. This appeal followed.

ANALYSIS

Arebalo challenges the circuit court's order granting Melendez's motion to strike and dismissing her complaint. "In deciding whether to strike a claim, a circuit court must 'accept as true all the evidence favorable to the [claimant,] as well as any reasonable inference a [fact finder] might draw therefrom which would sustain the . . . cause of action.'" Dixon v. Dixon, 71 Va. App. 709, 714 (2020) (quoting Chaplain v. Chaplain, 54 Va. App. 762, 772 (2009)). "At the motion-to-strike stage, '[t]he trial court is not to judge the weight and credibility of the evidence, and may not reject any inference from the evidence favorable to the [non-moving party] unless it would defy logic and common sense.'" Id. at 714-15 (quoting Chaplain, 54 Va. App. at 772-73). "When considering on appeal a trial court's decision to grant a motion to strike, 'it is [this Court's] duty to view the evidence and all reasonable inferences therefrom in the light most favorable to the [party] whose evidence was struck.'" Barnes v. Barnes, 64 Va. App. 22, 28-29 (2014) (quoting Costner v. Lackey, 223 Va. 377, 381 (1982)).

### I. *Corroboration*

Arebalo argues that the circuit court erred in granting the motion to strike because she claimed that the parties' testimony and her "testimony that independent corroborating evidence was obtained" was sufficient to prove her annulment case. Arebalo asserts that Melendez did not divorce his first wife before marrying her.

"[A] bigamous marriage is void and it confers no legal rights to the parties. It is 'contrary to the laws of Virginia and public policy.'" Shoustari v. Zamani, 39 Va. App. 517, 520 (2002) (quoting Kleinfield v. Veruki, 7 Va. App. 183, 190 (1988)); see also Rahnema v. Rahnema, 47 Va. App. 645, 651 n.2 (2006). "Although a bigamous marriage is 'absolutely void, without any

decree of divorce, or other legal process,' Code § 20-43, a party may seek a judicial decree annulling the marriage on the basis of bigamy." Zedan v. Westheim, 60 Va. App. 556, 576 n.9 (2012). A circuit court cannot, however, grant an annulment based on "the uncorroborated testimony of the parties or either of them." Code § 20-99(1).

Arebalo argues that her corroborating evidence was her testimony that she had obtained Melendez's marriage and divorce records from Bolivia. She contends that although the documents themselves were not admitted into evidence, the circuit court could have found from these "surrounding circumstances" that Melendez had not divorced his first wife before marrying Arebalo. "The question of corroboration is one of fact, the decision of which in each case depends upon the peculiar facts of that particular case." Graves v. Graves, 193 Va. 659, 661 (1952). "The purpose of requiring corroboration is to prevent collusion by the parties in obtaining a divorce. Where it is apparent that there is no collusion . . . , the corroboration needs to be only slight." Venable v. Venable, 2 Va. App. 178, 184 (1986).

"The general rule is that where a particular fact or circumstance is vital to complainant's case, some evidence of the same, *in addition to the complainant's own testimony*, is essential." Graves, 193 Va. at 662 (emphasis added); see also Dodge v. Dodge, 2 Va. App. 238, 245 (1986). Arebalo relies solely on her own testimony as the corroborating evidence because the documents were not admitted into evidence. As noted, however, a party's own testimony is not sufficient corroboration. Code § 20-99(1). Accordingly, the circuit court did not err in granting the motion to strike based on the lack of corroborating evidence to support the annulment.

## II. *Foreign documents*

Arebalo argues that the circuit court erred in excluding the Bolivian documents because they were "notarized by the Bolivian clerk of court and both parties had reasonable opportunity

to investigate the accuracy and authenticity of the purported official records." The record, however, does not include the Bolivian documents.

"[O]n appeal the judgment of the lower court is presumed to be correct and the burden is on the appellant to present to us a sufficient record from which we can determine whether the lower court has erred in the respect complained of." Crawley v. Ford, 43 Va. App. 308, 315 (2004) (quoting Justis v. Young, 202 Va. 631, 632 (1961)); see also Berglund Chevrolet, Inc. v. Virginia Dep't of Motor Vehicles, 71 Va. App. 747, 759 (2020) ("An appellant bears the burden of providing an adequate record from which the appellate court can review its claimed assignments of error."). "An appellate court cannot review the correctness of a trial court's decision unless the evidence upon which the trial court relied is included in the record on appeal." Bland v. Virginia State Univ., 272 Va. 198, 201-02 (2006).

Arebalo's failure to include the Bolivian documents in the record as a refused exhibit precludes our consideration of this assignment of error. We cannot review the circuit court's ruling on the admissibility of the Bolivian documents without inspecting the documents themselves. See id. at 202.

*Attorney's fees*

Melendez asks this Court to award him attorney's fees incurred on appeal. See O'Loughlin v. O'Loughlin, 23 Va. App. 690, 695 (1996). "The decision of whether to award attorney's fees and costs incurred on appeal is discretionary." Friedman v. Smith, 68 Va. App. 529, 545 (2018). Having reviewed and considered the entire record in this case, we hold that Melendez is entitled to a reasonable amount of attorney's fees, and we remand for the circuit court to set a reasonable award of attorney's fees incurred by Melendez in this appeal. Rule 5A:30(b).

CONCLUSION

For the foregoing reasons, the circuit court's ruling is affirmed.  We remand this case to the circuit court for determination and award of the appropriate appellate attorney's fees, which also should include any additional attorney's fees incurred at the remand hearing.

<u>Affirmed and remanded.</u>