COURT OF APPEALS OF VIRGINIA

Present:    Chief Judge Decker, Judges Beales and O'Brien
Argued by videoconference

NICOLE COOPER

MEMORANDUM OPINION[*] BY
v.        Record No. 1078-20-3          JUDGE MARY GRACE O'BRIEN
                                        APRIL 20, 2021
JUSTIN LAURENT

FROM THE CIRCUIT COURT OF BEDFORD COUNTY
James W. Updike, Jr., Judge

Matthew L. Pack (M. Pack Law, PLLC, on brief), for appellant.

Emily Rowe Sitzler (William P. Walker, Guardian *ad litem* for the
minor children; Rowe & Sitzler, LLP, on brief), for appellee.[1]

Nicole Cooper ("mother") moved to amend a custody and visitation order for her two

children, who resided with their father, Justin Laurent ("father"). At the close of mother's case at

trial, the court granted father's motion to strike the evidence. Mother contends that the court erred

by finding that she had not proved a material change in circumstances. She also argues that father

waived his motion to strike by introducing evidence during her case-in-chief. Finding no error, we

affirm.

BACKGROUND

"According to well-settled principles of appellate review, when the trial court grants a

motion to strike the plaintiff's evidence, [appellate courts] review the evidence on appeal in the light

most favorable to the plaintiff." Green v. Ingram, 269 Va. 281, 284 (2005); see also Chaplain v.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Pursuant to Rule 5A:19(d), the Guardian *ad litem* notified the clerk's office of his support
of father in a letter dated January 21, 2021.

Chaplain, 54 Va. App. 762, 771 (2009). Accordingly, we consider the evidence in the light most favorable to mother, the plaintiff at trial.

The parties divorced in 2013 and were granted joint legal custody of their two minor sons. Father, who received primary physical custody, continued to reside with the children in Bedford. Mother lived in Roanoke and had visitation every other weekend, a week at Christmas, and two weeks in the summer.[2]

In June 2015, on mother's motion to amend visitation, the circuit court found "no material change in circumstances from the time of entry of the last final order." It denied her motion and remanded the case to the juvenile and domestic relations district court ("JDR court") for any further proceedings.

In April 2019, mother filed motions in JDR court to amend custody and visitation. At that time, father requested sole legal custody. After a September 27, 2019 hearing, the JDR court ruled that the parties would continue to share legal custody and father would retain primary physical custody, but it expanded mother's visitation schedule, awarding her "physical custody of the children during the summer months." The order also contained a provision emphasizing father's obligation to cooperate with mother and keep her reasonably informed of all medical, dental, and mental health matters and decisions concerning the children, including "any and all . . . appointments."

Both parties appealed the JDR ruling to circuit court, but father subsequently withdrew his motion for sole legal custody. He advised the court that he no longer "believe[d] that there's been a material change in circumstances that would warrant . . . any kind of change in custody or visitation." In addition to appealing the custody and visitation order, mother filed a "Motion to

---

[2] The 2013 order is not in the record, but the parties do not dispute its provisions for custody and visitation.

Show Cause" in circuit court on January 3, 2020, alleging that father failed to communicate with her regarding certain medical decisions for one of their children.[3]

Mother's motions to amend custody and visitation were heard on February 27, 2020. At that time, the parties' older son, P.L., was thirteen, and their younger son, J.L., was ten.[4] For modification purposes, the court found that the initial 2013 order was the most recent custody order and the last visitation order was in 2015, when the court dismissed mother's request to modify visitation.

Mother presented evidence that she remarried in August 2013 and, subsequent to the 2015 order denying her request to modify visitation, she and her new husband purchased a home in Roanoke and obtained jobs as school bus drivers. She stated that she chose this job "[b]ecause it works around school schedules" and enables her to "still . . . have [her] visitation with the boys." Mother's husband testified that when the boys visit, he plays games and watches television with them and assists with their homework. Mother explained that she was seeking primary physical custody because she believed her sons "would be in a more stable environment in [her] house."

The boys have lived in the same home with their father since birth and have always attended Bedford County schools. At the time of trial, they were active in sports and theater programs, and P.L., who was in eighth grade, already had four high school credits. P.L. also had been diagnosed with anxiety and ADHD and was prescribed medication by a psychiatrist. Mother testified that she was unaware of P.L.'s mental health issues and treatment until the child told her in 2017 or 2018. She also stated that father did not advise her that P.L. was taking prescription medication for his anxiety; she learned about the medication when father sent P.L. for visitation with pills in a Ziploc

---

[3] The circuit court never issued a rule to show cause or otherwise adjudicated mother's motion.

[4] We use initials, instead of the children's names, to protect their privacy.

plastic bag. According to mother, father is difficult to communicate with, "take[s] days to respond," and does not consult her about scheduling doctors' appointments for P.L. Mother also stated that on November 25, 2019, father agreed to an increase in P.L.'s medication without consulting her.

Mother acknowledged that father informed her of the November 25 doctor's appointment in September 2019, but she could not attend because missing work "would have damaged [her pay]check." She also agreed that father often grants her requests for additional visitation with the children.

Mother called father as an adverse witness in her case. Father testified that he had been employed delivering fuel for approximately seven years and had a commercial driver's license with hazardous materials endorsements. He also testified that he has Asperger's syndrome and, at the time of trial, had been taking prescription medication for ADHD for "less than a year," but the medication does not impact his ability to drive or work.

Father explained that P.L.'s doctor initially advised against telling mother about P.L.'s medical appointments because "the doctor knows [mother] and knows that she's easy to excitement[,] and [the doctor] was worried that that may excite [P.L.] even more." Father acknowledged that he only provided mother with the information about P.L.'s diagnoses and treatment "after she asked" and stated that he was used to "do[ing] everything" for the children, even when the parties were still married.

Father testified that he primarily communicates with mother via text message. He introduced text messages showing that he told mother of P.L.'s theater productions and accommodated her requests for additional visitation. Father also introduced his text messages advising mother of P.L.'s November 2019 medical appointment, as well as appointments for December 2019 and January 2020. When the psychiatrist again increased P.L.'s medication in January 2020, father informed mother and provided her a copy of the prescription.

Father agreed with mother having expanded visitation with the children. However, he opposed a custody change because it would result in the "children being uprooted out of Bedford and put in Roanoke." When asked about his initial failure to communicate with mother regarding P.L.'s mental health issues, he responded that, in retrospect, he "would have done things differently." He also stated that "according to the paperwork for [c]ourt," he now realizes that he must communicate with mother and "that's what [he's] been doing."

At the close of mother's case, father moved to strike the evidence on the ground that mother failed to establish a *prima facie* showing of "a material change in circumstances . . . that warrants a change in custody for the best interests of the children."

The court granted father's motion. It noted that most of mother's evidence related to her contention that father "didn't share . . . certain information concerning medical treatment and prescriptions" but "there's evidence that he didn't think he had to." However, the court found that father recognized, "particularly since the last [c]ourt hearing," that he had an obligation to keep mother informed.

The court ruled that mother had the "burden . . . to prove a material change in circumstances warranting modification of the earlier order to serve the best interest of the children" and "applying that standard, the evidence is insufficient." The court concluded that, even viewing the evidence in the light most favorable to mother, "there's got to be evidence to view[,] and I don't see it here."

The final order dismissed mother's motion "because [she] failed to prove a material change of circumstances in [the] light most favorable to [her]."

ANALYSIS

Code § 20-108 gives a court authority to modify an order "concerning the care, custody, and maintenance of the children and make a new decree concerning the same, as the circumstances of the parents and the benefit of the children may require."

The Supreme Court has established a two-prong test to determine whether modification of a custody order is warranted: "first, has there been a change in circumstances since the most recent custody award; second, would a change in custody be in the best interests of the children." Keel v. Keel, 225 Va. 606, 611 (1983). See also Rhodes v. Lang, 66 Va. App. 702, 709 (2016) (stating that Keel's two-prong test applies to visitation order modifications). "[T]he parent seeking to obtain a transfer of custody bears the burden to show a change in circumstances following the most recent custody award." Hughes v. Gentry, 18 Va. App. 318, 322 (1994).

Here, the initial custody and visitation order was entered in 2013, when the parties divorced. In 2015, when mother petitioned to amend visitation, the court found that she had not established a material change in circumstances and denied her motion. Mother's subsequent motion that was heard in February 2020 requested changes in both custody and visitation. For purposes of determining materially changed circumstances, the 2013 order establishes the baseline for modifying custody, and the 2015 order establishes the baseline for modifying visitation. We note that the only evidence of a changed circumstance predating the 2015 visitation order was mother's 2013 remarriage. Regardless of the reference date, for the reasons that follow, the court did not err in granting father's motion to strike based on mother's failure to establish materially changed circumstances.

Whether a material change in circumstances has occurred is a question of fact. See Visikides v. Derr, 3 Va. App. 69, 71-72 (1986). In reviewing a trial court's decision to grant a motion to strike, "it is [this Court's] duty to view the evidence and all reasonable inferences

therefrom in the light most favorable to the plaintiff whose evidence was struck." Barnes v. Barnes, 64 Va. App. 22, 28 (2014) (alteration in original) (quoting Costner v. Lackey, 223 Va. 377, 381 (1982)).

> That standard requires the trial court to accept as true all the evidence favorable to the plaintiff as well as any reasonable inference a [factfinder] might draw therefrom . . . . The trial court is not to judge the weight and credibility of the evidence, and [it] may not reject any inference from the evidence favorable to the plaintiff unless it would defy logic and common sense.

Chaplain, 54 Va. App. at 772-73 (quoting Austin v. Shoney's, Inc., 254 Va. 134, 138 (1997)).

A trial court only addresses the second prong of the Keel test, the best interests of the children, if the petitioning party has established a material change in circumstances. See Wheeler v. Wheeler, 42 Va. App. 282, 289 (2004); see also Hughes, 18 Va. App. at 322 (noting that the threshold requirement for materially changed circumstances "provide[s] stability in the life of the child whose custody is the subject of the conflict between the parents"). If a party does not establish this threshold issue, the court does not consider whether a change in custody would be in the best interests of the children. See Wheeler, 42 Va. App. at 289. Here, because the court found that mother had not met her burden to show a material change in circumstances, it did not address whether modifying custody or visitation would be in the children's best interests.[5]

In Keel, the Supreme Court stated that a "change in circumstances"

> is not limited to whether negative events have arisen at the home of the custodial parent. It is broad enough to include changes involving the children themselves such as their maturity, their special educational needs, and any of a myriad of changes that might exist as to them. It is also broad enough to include positive changes in the circumstances of the noncustodial parent such as remarriage and the creation of a stable home environment, increased ability to provide

---

[5] Although the court referred to the children's best interests in its bench ruling, its final order expressly dismissed mother's motions based on her failure to prove a material change in circumstances. Because "a court speaks through its orders," see McBride v. Commonwealth, 24 Va. App. 30, 35 (1997), we limit our review to the court's ruling as reflected in the final order.

emotional and financial support for the children, and other such changes.

225 Va. at 611-12. In this case, mother testified that she remarried, purchased a home, and began a job with a schedule conducive to raising children. She also introduced evidence that father initially did not advise her of P.L.'s ADHD and anxiety diagnoses or consult with her about P.L.'s treatment. She elicited testimony that father recently began taking prescription medication for his own ADHD diagnosis. Even accepting as true all evidence and inferences that some circumstances had changed since the 2013 custody order and the 2015 visitation order, the court could reasonably conclude that these changes were not material because they did not significantly alter the situation that existed when the previous orders were entered. See id. at 612.

Under Keel, a noncustodial parent's remarriage and stabilization, as well as a child's "special educational needs," are merely factors a court can consider; they do not always establish a material change in circumstances unless they make the prior orders inappropriate or unworkable. See id. Here, father was awarded primary physical custody in 2013 and, as of the February 2020 trial, was continuing to meet the needs of both children. They have lived with him in Bedford County their entire lives, have always attended Bedford County schools, and participate in extracurricular activities. Father consistently provided a stable home life for the children. Although P.L. was diagnosed with ADHD and anxiety, he performed well in school, and father ensured that the child received the necessary medical attention. Further, there was no evidence that father's own mental health issues negatively affected his parenting. Considering the evidence in mother's favor, we find the court could reasonably conclude that she failed to establish that the positive developments in her life materially changed the circumstances under which the court awarded father primary physical custody in 2013 and denied her request to modify visitation in 2015.

Additionally, the evidence showed that although father initially neglected to keep mother informed about P.L.'s medical and mental health issues, he improved his communication with mother by the time of the hearing. Text messages reflect that father informed mother of P.L.'s appointments and medications. Text messages also demonstrate that father allowed mother extra visitation and told her about the children's extracurricular activities so that she could attend. Father acknowledged that he should have been more forthcoming in the past, and he testified that in retrospect, he would have done things differently. Therefore, the evidence supports the court's determination that father's communication issues did not demonstrate a material change in circumstances and that mother failed to meet her burden of proof on this threshold issue. See Hughes, 18 Va. App. at 322.

Mother also contends that father waived his motion to strike by introducing text messages during her case-in-chief. Relying on United Leasing Corp. v. Lehner Family Business Trust, 279 Va. 510 (2010), she argues that by introducing text messages while cross-examining her, father "abandoned" his motion to strike at the conclusion of her case. However, United Leasing is not applicable. That case addressed a "renewed" motion to strike at the close of all evidence and held that a defendant must reassert all bases for its initial motion or else be deemed to have abandoned them for appellate review. See id. at 516-20.

United Leasing does not preclude a defendant from presenting evidence during a plaintiff's case-in-chief and thereafter moving to strike at the end of the plaintiff's case. Thus, father did not waive his motion by introducing evidence when he cross-examined mother; instead, he simply added to the quantum of evidence the court could consider when determining whether to grant his motion. See Costner, 223 Va. at 381. In ruling on father's motion, the court did not make any credibility determinations or weigh that evidence; rather, it applied the proper standard by "accept[ing] as true all the evidence favorable to [mother] as well as any reasonable inference a

[factfinder] might draw therefrom" and concluded that the evidence failed to make a *prima facie* showing of materially changed circumstances. <u>See</u> <u>Chaplain</u>, 54 Va. App. at 772. Applying this same standard on appeal, <u>see</u> <u>id.</u> at 771, we find that the record supports this conclusion and that the court did not err in granting father's motion to strike.

## CONCLUSION

For the foregoing reasons, the court did not err in finding that mother failed to make a *prima facie* case of materially changed circumstances. Additionally, father did not waive his motion to strike by introducing evidence during mother's case-in-chief. For these reasons, we affirm the court's decision to grant father's motion to strike.

<u>Affirmed.</u>