COURT OF APPEALS OF VIRGINIA

PUBLISHED

Present:   Judges Humphreys, Beales and McCullough
Argued at Alexandria, Virginia


BINDU BAJGAIN

v.      Record No. 1127-14-4

DEVENDRA BAJGAIN

OPINION BY
JUDGE STEPHEN R. McCULLOUGH
MARCH 17, 2015


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Robert J. Smith, Judge[1]

Sequitta Banks (B&B Law Group, PLC, on briefs), for appellant.

Amanda P. DeFede (McIntyre DeFede Law PLLC, on brief), for
appellee.


Bindu Bajgain, wife, appeals from several rulings of the Fairfax County Circuit Court in

connection with her divorce from her husband, Devendra Bajgain.  While their divorce suit was

pending in Fairfax County, wife initiated parallel proceedings in Nepal for divorce and for the

distribution of marital assets.  This appeal turns on the meaning of a stipulation the parties made

concerning the proceedings in Nepal.  For the reasons detailed below, we affirm the judgment of

the circuit court.

BACKGROUND

On appeal, we view the evidence in the light most favorable to husband, the prevailing

party below, and grant him "all reasonable inferences fairly deducible therefrom."  Anderson v.

Anderson, 29 Va. App. 673, 678, 514 S.E.2d 369, 372 (1999).

---

[1] Judge Smith signed the final decree of divorce.  Judge David S. Schell entered the
orders at issue, including the October 2, 2013 order.

Husband and wife are originally from Nepal. On April 20, 2011, husband filed for divorce in Fairfax County Circuit Court. Wife filed an answer and a cross-complaint, in which she sought, among other things, the determination of separate and marital property, the valuation of real and personal property, the equitable distribution of marital property, and spousal support. On June 10, 2011, the circuit court entered a *pendente lite* consent order, awarding wife $1,500 spousal support per month. The court scheduled an equitable distribution hearing for April 11, 2012.

Wife then initiated several legal proceedings in the Morang District Court, in Nepal. On August 30, 2011, wife filed for the division of marital property. About eight months later, on April 8, 2012, she filed for divorce. Under Nepali law, divorce is a separate legal action from the division of the parties' marital property.[2] Wife did not request child support in Nepal. Sometime before August 20, 2012, wife also filed three separate claims alleging that husband had engaged in forgery. Wife alleged husband fraudulently transferred marital funds to his relatives.[3] These transfers were all made shortly before, or shortly after, husband filed for divorce in Fairfax County. Husband argued that he transferred the funds in repayment of loans. The Morang District Court ultimately dismissed wife's forgery claims, finding insufficient evidence of fraud.

On May 25, 2012, husband, citing the proceedings in Nepal, filed a motion in Fairfax County Circuit Court to stay the equitable distribution proceeding and to modify the *pendente lit*e support. On August 20, 2012, the parties reached a stipulation concerning the effect of the

---

[2] The Morang District Court awarded wife a divorce, which she then appealed. The appellate court in Nepal vacated the divorce. On April 1, 2013, wife ultimately withdrew her request for divorce from the Morang District Court.

[3] The record is not clear precisely when wife filed these forgery claims, but she admitted they were filed before the circuit court stayed the equitable distribution proceeding on August 20, 2012.

proceedings in Nepal on the ongoing litigation in Fairfax County. Before reading the stipulation, the circuit court stated, "I am going to ask the parties to listen very carefully to what the attorneys say. If there is anything they say that is not in accord with their agreement, they should contact either counsel or associate counsel to let them know immediately upon mistake." Counsel for wife then read the following stipulation into the record:

> This matter is stayed, pending a resolution of Ms. Bajgain's claims now pending before the Court of Nepal. After these matters are adjudicated or dismissed, the parties stipulate the court's power, authority and jurisdiction is hereby reserved and retained to adjudicate either party's claims for equitable distribution pursuant to 20-107.3, and/or spousal support pursuant to 20-107.1, or any other related matters with regard to equitable distribution, spousal support or child support.
>
> Now, either party retains their rights to argue such legal or equitable claims they may have in any further hearing, but the power and authority and jurisdiction of this court to adjudicate equitable distribution and spousal support is specifically retained.
>
> Now, for example, with regard to the issues of res judicata, if Ms. Bajgain brings a divorce decree from Nepal that totally adjudicates a divorce, then there is no res judicata argument as to equitable distribution, spousal support or child support.
>
> However, if the courts of Nepal adjudicate the ownership of certain property in Nepal, then this court wouldn't relitigate those claims. Now, like for example, if they adjudicate a piece of property is divided in a certain way, this court would not re-adjudicate that.

The court further inquired, "If the court in Nepal divides all of the property and makes resolution of spousal support and child support, is that res judicata on this court, according to your agreement?" Husband's counsel responded, "Your Honor, it hypothetically is, given [wife's counsel's] hypothetical and the application of res judicata, which is simply that it was fully litigated in another jurisdiction to a Final Order. So there would be nothing left for this court to be determined." Wife's counsel added that, "[i]f the court in Nepal adjudicates the property case and sets forth orders regarding certain pieces of property, then those pieces of

- 3 -

property would not be re-litigated in this court." On August 20, 2012, the court entered an order incorporating the parties' agreement by reference. Nine months later, on May 7, 2013, the Morang District Court issued a final order dividing the parties' property.

On August 12, 2013, husband filed a motion in Fairfax County, to dismiss wife's claim for equitable distribution and also to request sanctions. He argued that, based on the Nepali court's apportionment of marital property and the parties' stipulation concerning the preclusive effect of the proceedings in Nepal, the circuit court no longer had jurisdiction over equitable distribution. Wife argued that dismissal was inappropriate because she sought only division of real property located in Nepal and had not asked for spousal support. Each party also argued that the other had impermissibly come into equity with unclean hands.

On August 15, 2013, the court heard argument and testimony concerning husband's motion to dismiss and for sanctions. Husband offered testimony from Khagendra Gherti Chhetry, a New York attorney also licensed to practice in Nepal. He explained that Nepali law is based on statutory enactments and on the common law of England. Regarding wife's forgery claims, he noted that the Nepali court considered evidence from fourteen witnesses and argument from both parties' counsel before concluding that wife had not proven her case.

Regarding the distribution of marital property, Chhetry testified that the Morang District Court "considered considerably all of the assets of the parties including what they have here [in the United States], and they have made a decision accordingly." He explained that, under Nepali law, a spouse can continue to receive spousal support so long as she does not take any property distribution. Once she takes her share of the property, however, spousal support ends. Here, wife took property. Furthermore, under the law of Nepal, the court distributed property that was given to husband by his relatives, including gifts given before the marriage. The Nepali court also awarded wife property husband had received by inheritance. Husband's pension, however,

- 4 -

was treated as his separate property, and it was not subject to distribution. Chhetry testified that the Nepali court "decided everything except the child support."

Wife's expert, a licensed Nepali attorney and part-time professor, testified that, in a domestic proceeding referred to as coparency, a court awards property to the husband and wife as well as to the children. Wife would receive one fourth of husband's property, and each of the Bajgains' two sons would receive one fourth. According to wife's expert, the Nepali court did not divide any property located in the United States.

The circuit court announced its decision on August 16, 2013. First, the court found "that the decisions of the court in Nepal would be honored by the parties . . . certainly as to all property." The court explained that Nepal's property distribution laws operate differently from Virginia's. Wife received twenty-five percent of the marital estate. The marital estate, however, included property that is generally considered separate in Virginia. For example, the marital estate included gifted and inherited property. On the other hand, Nepali law considers husband's pension to be his separate property, and it was not subject to division. Also, wife's decision to seek property distribution in Nepal precluded her from receiving spousal support. The circuit court found that "the proceedings in Nepal were fair and the wife was given an opportunity to be fully heard and present evidence and present witnesses."

On October 2, 2013, the court entered an order memorializing its decision, which incorporated by reference a transcript of the ruling announced from the bench August 16, 2013. The court held that wife was barred from requesting spousal support and equitable distribution and that the Morang District Court's order dated May 7, 2013, should be given "[f]ull faith and credit." The court further held that, "[u]nder the principles of res judicata and unclean hands [wife's] request for relief under the cross-complaint for spousal support and equitable distribution of property, including waste, are barred because they have been fully litigated by a

Court of competent jurisdiction." The parties submitted an agreed upon disposition for child support, which the court entered on October 4, 2013.

On October 21, 2013, wife filed a notice of appeal with this Court.[4] On December 27, 2013, wife informed this Court, by letter, of her desire to withdraw the appeal. According to wife, on January 29, 2014, she delivered a motion to withdraw her appeal. On February 4, 2014, husband filed a motion to dismiss the appeal, with prejudice, for wife's failure to timely file transcripts. On February 21, 2014, this Court dismissed the appeal, Bajgain v. Bajgain, No. 2023-13-4, for failure to timely file the notice of appeal with the circuit court.[5] The order did not specify whether the dismissal was with or without prejudice.

On May 28, 2014, the circuit court entered a final decree of divorce. The present appeal followed.

ANALYSIS

I. THE APPEAL IS PROPERLY BEFORE US.

As a threshold matter, husband argues that we must dismiss the appeal for two reasons: first, because our dismissal of wife's previous appeal bars the present appeal and, second, because wife's written objections to the October 2, 2013 order are insufficient to preserve the issues she raises on appeal.

A. Wife's first appeal does not foreclose the present appeal.

This Court is a court of limited jurisdiction. "Absent subject matter jurisdiction, this Court cannot address and resolve the merits of a claim on appeal." Chaplain v. Chaplain, 54

---

[4] We may take judicial notice of our records. Wright v. Commonwealth, 53 Va. App. 266, 281, 670 S.E.2d 772, 779 (2009).

[5] Our records do not reflect any notice of appeal filed with the circuit court in connection with wife's first appeal. See Rule 5A:6 (notice of appeal must be filed with the "clerk of the trial court").

Va. App. 762, 767, 682 S.E.2d 108, 110 (2009). Ordinarily, the entry of a final order is a necessary prerequisite for this Court to resolve the merits of an appeal. See Code § 17.1-405(3)(b), (c), (d) ("Any aggrieved party may appeal to the Court of Appeals from . . . [a]ny final judgment, order, or decree of a circuit court involving . . . [d]ivorce; . . . [c]ustody; . . . [s]pousal or child support; . . . ."). Code § 17.1-405(4)(ii), however, authorizes parties to appeal an "interlocutory decree or order" when the order has "adjudicat[ed] the principles of a cause." The order dated October 2, 2013, indisputably, was not a final order. Husband argues, however, that this order was an appealable interlocutory order that "adjudicated the principles of the cause" and, consequently, our dismissal of the appeal was on the merits. We disagree.

"[I]nterlocutory appeals often result in inefficiency and unnecessary delay and expense." de Haan v. de Haan, 54 Va. App. 428, 441, 680 S.E.2d 297, 304 (2009). In light of these considerations, we have recognized that "[s]ignificant policy interests counsel against frequent interlocutory appeals and, therefore, finding an order adjudicates 'the principles of a cause.'" Id. at 440, 680 S.E.2d at 303. For an order to "adjudicate the principles of a cause" it must

> determine that "the rules or methods which the rights of the parties are to be finally worked out have been so far determined that it is only necessary to apply those rules or methods to the facts of the case in order to ascertain the relative rights of the parties, with regard to the subject matter of the suit."

Pinkard v. Pinkard, 12 Va. App. 848, 851, 407 S.E.2d 339, 341 (1991) (quoting Lee v. Lee, 142 Va. 244, 252-53, 128 S.E. 524, 527 (1925)). The interlocutory order must address "the chief object[s] of the suit." Erikson v. Erikson, 19 Va. App. 389, 391, 451 S.E.2d 711, 713 (1994) (citation and internal quotation marks omitted). "Typically, [in divorce matters,] such goals include obtaining a divorce, determining custody of children, deciding whether to grant child or spousal support, and resolving equitable distribution." de Haan, 54 Va. App. at 439, 680 S.E.2d at 303.

Virginia's appellate courts have previously considered whether an order in a divorce suit is one that "adjudicates the principles of a cause." See, e.g., Lewis v. Lewis, 271 Va. 520, 527-28, 628 S.E.2d 314, 318 (2006) (order dismissing husband's cross-bill for annulment did not adjudicate the principles of a cause when wife's divorce complaint seeking divorce and equitable distribution was still pending); Webb v. Webb, 13 Va. App. 681, 682-83, 414 S.E.2d 612, 613 (1992) (interlocutory order finding a separation agreement invalid was not appealable because "[t]he matter was still in the breast of the court and subject to alteration and amendment by the judge before entering an appealable order" and the court still had to address the remaining issues, including the grounds for divorce and equitable distribution (alteration in original) (citations and internal quotation marks omitted)); Erikson, 19 Va. App. at 391, 451 S.E.2d at 713 (decree upholding the validity of the marriage did not adjudicate the principles of a cause because the ruling did not determine whether a divorce would be granted or on what grounds). But see Chaplain, 54 Va. App. at 768-69, 682 S.E.2d at 111 (order upholding a premarital agreement adjudicated the principles of a cause when the parties stipulated that the grounds for divorce were not contested and the sole issue to be decided by the circuit court was the validity of the premarital agreement).

Wife's initial appeal in this matter was not a permissible interlocutory appeal because the October 2, 2013 order did not "adjudicate the principles of a cause." That order did not award a divorce, the chief object of the suit, nor did it decide the issue of child support. Wife's appeal was premature: the order appealed from was neither a final order nor did it adjudicate the principles of a cause. Accordingly, this Court lacked subject matter jurisdiction to adjudicate the appeal. Lewis, 271 Va. at 528, 628 S.E.2d at 319. Dismissal of such an appeal was without prejudice and did not bar wife from appealing later, upon entry of a final order. Id. at 528 n.5,

628 S.E.2d at 319 n.5; see also Pinkard, 12 Va. App. at 853, 407 S.E.2d at 342.  That is what

wife did.  The present appeal is properly before us.

B.  Wife preserved her arguments for appellate review.

Wife's counsel endorsed the final decree of divorce with the following notation:

> SEEN AND objected to on the grounds that the decree
> incorporates the October 2, 2013, order which was issued contrary
> to law.  Defendant requested that the appeal be withdrawn on
> December 27, 2013, prior to the Court's dismissal without
> prejudice on February 21, 2014.

Husband argues that wife's failure to note an objection on the October 2, 2013 order, and the

objection she did note on the final divorce decree, are inadequate to preserve her assignments of

error.  According to husband, wife failed to contemporaneously object to the circuit court's order

as required by Rule 5A:18.  He adds that wife failed to provide "a clear and exact reference to

the page(s) of the transcript, written statement, record, or appendix where each assignment of

error was preserved in the trial court."  Rule 5A:20(c).  Wife does direct us, in great detail, to the

places where she preserved her arguments below.  Husband argues, however, that these

objections did not occur "at the time of the court's oral ruling on August 16, 2013 or any date

thereafter."

Husband's arguments are without merit.  First, wife's trial memorandum in opposition to

husband's motion to dismiss raised the arguments she presses before this Court.  Wife's counsel

also presented oral argument and evidence in support of her position.  The fact that those

objections were not reiterated in a formal way upon entry of various orders is of no consequence.

Under Code § 8.01–384(A),

> No party shall be deemed to have agreed to, or acquiesced in, any
> written order of a trial court so as to forfeit his right to contest such
> order on appeal except by express written agreement in his
> endorsement of the order.  Arguments made at trial via written
> pleading, memorandum, recital of objections in a final order, oral
> argument reduced to transcript, or agreed written statements of

- 9 -

> facts shall, unless expressly withdrawn or waived, be deemed preserved therein for assertion on appeal.

The Supreme Court of Virginia has repeatedly held that,

> once a litigant informs the circuit court of his or her legal argument, [i]n order for a waiver to occur within the meaning of Code § 8.01-384(A), the record must affirmatively show that the party who has asserted an objection has abandoned the objection or has demonstrated by his conduct the intent to abandon that objection.

Kellermann v. McDonough, 278 Va. 478, 491, 684 S.E.2d 786, 792 (2009) (alteration in original) (internal quotation marks omitted) (quoting Helms v. Manspile, 277 Va. 1, 6, 671 S.E.2d 127, 129 (2009)). The Supreme Court reiterated those principles most recently in Cashion v. Smith, 286 Va. 327, 333-34, 749 S.E.2d 526, 529-30 (2013).

We have construed Rule 5A:18 according to its purposes, namely, "to alert the trial judge to possible error so that he or she may consider the matter and take corrective action necessary to avoid unnecessary appeals, reversals and mistrials." Martin v. Commonwealth, 13 Va. App. 524, 534, 414 S.E.2d 401, 406 (1992) (en banc). "In addition, a specific, contemporaneous objection gives the opposing party the opportunity to meet the objection at that stage of the proceeding." Weidman v. Babcock, 241 Va. 40, 44, 400 S.E.2d 164, 167 (1991). Wife's written and oral arguments satisfied Rule 5A:18.

Wife's arguments are not procedurally defaulted. Accordingly, we proceed to address the merits of her contentions.

## II. WIFE AGREED TO BE BOUND BY THE DECISIONS OF THE NEPALI COURT.

### A. Wife's narrow reading of the parties' stipulation must be rejected.

Wife contends in her second assignment of error that the circuit court erred in finding that she agreed to be bound by the decisions of the court in Nepal. According to her, the parties stipulated that the circuit court's power, authority, and jurisdiction were reserved and retained to

adjudicate equitable distribution under Code § 20-107.3, spousal support under Code § 20-107.1, or any other related matters with regard to equitable distribution, spousal support, or child support.

As a general proposition, Virginia courts look "with favor upon the use of stipulations . . . which are designed to narrow the issues and expedite the trial or settlement of litigation." McLaughlin v. Gholson, 210 Va. 498, 500, 171 S.E.2d 816, 817 (1970).[6] Here, the parties disagree about the scope of the stipulation they made. Because the stipulation was the subject of a court order, the court was, in effect, construing the scope of its own order. We "give deference to the interpretation adopted by the lower court" of its own order. Rusty's Welding Serv., Inc. v. Gibson, 29 Va. App. 119, 129, 510 S.E.2d 255, 260 (1999) (en banc). That interpretation, however, must be reasonable, and we will "apply an abuse of discretion standard." Roe v. Commonwealth, 271 Va. 453, 458, 628 S.E.2d 526, 528 (2006).

Wife stresses isolated segments of the stipulation in support of her argument that the stipulation should be given a narrow reading. For example, she points to the following: "[T]he parties stipulate the court's power, authority and jurisdiction is hereby reserved and retained to adjudicate either party's claims for equitable distribution pursuant to 20-107.3, and/or spousal support pursuant to 20-107.1." The remainder of the stipulation clarifies, however, that if the Nepali court were to divide the marital property, its decision would be binding. The court pointedly asked counsel, "If the court in Nepal divides *all of the property* and makes resolution of spousal support and child support, is that res judicata on this court, according to your agreement?" (Emphasis added.) Counsel for both wife and husband answered in the affirmative.

---

[6] Although their stipulation was not written or signed, as contemplated by Code § 20-109(C), it remained binding on the parties once the circuit court accepted it and incorporated it by reference in a court order they and their counsel endorsed.

Husband's counsel responded, "Your Honor, it hypothetically is, given [wife's counsel's] hypothetical and the application of res judicata, which is simply that it was fully litigated in another jurisdiction to a Final Order. So there would be nothing left for this court to be determined." Wife's counsel added that, "[i]f the court in Nepal adjudicates the property case and sets forth orders regarding certain pieces of property, then those pieces of property would not be re-litigated in this court."

Moreover, the parties agreed on August 20, 2013, to stay the proceedings in Fairfax County Circuit Court, "pending a resolution of Ms. Bajgain's claims now pending before the Court of Nepal." The claims then pending in Nepal included wife's suit in coparceny, i.e., for division of marital property, filed August 30, 2011, and her forgery claims filed before the circuit court stayed its equitable distribution proceedings.

The record supports the circuit court's conclusion that wife agreed to be bound by whatever issues were resolved to finality in Nepali courts, and to reserve jurisdiction in Fairfax County Circuit Court for whatever issues remained unadjudicated. Moreover, wife was the one who *initiated* the litigation in Nepal, where she was represented by counsel. Reviewing the circuit court's construction of its own order under a deferential abuse of discretion standard, we affirm its decision that the parties' stipulation precludes wife from relitigating the issues the Nepali court resolved.

### B. The Nepali court divided all of the marital assets.

Relying on her own expert's testimony, wife maintains that the Nepali court had no jurisdiction over property or assets located in the United States and, therefore, the Fairfax County Circuit Court should allocate those assets. She also suggests that the Nepali court did not, in fact, distribute all of the marital property. The circuit court, however, found credible the testimony from husband's expert that the Nepali court had, in fact, divided all of the parties'

- 12 -

assets.[7] The evidence shows that wife and husband submitted property schedules, with husband's schedule including property located in the United States, to the Nepali court and that the Nepali court proceeded to divide that property. Assuming, as wife argues, that the Nepali court erred under the laws of that country, the remedy for wife was to seek relief in Nepal, not Virginia. Indeed, wife had her Nepali divorce decree vacated following an appeal. The evidence supports the circuit court's conclusion that the Nepali court allocated all of the parties' property, including property located in the United States, and that the parties' stipulation foreclosed her from relitigating the distribution of marital property in Fairfax County.

Wife also argues that she contemplated that the Nepali court would only divide property located there and that the Fairfax County Circuit Court would divide property located in the United States. She maintains that, under those circumstances, the joint stipulation does not preclude her from litigating the division of property held in the United States. In his motion to stay equitable distribution proceedings in Fairfax County, filed May 25, 2012, husband noted that the Morang District Court would divide "[a]ll property which existed as of August 29, 2011 . . . to include assets held in the United States." Wife did not then dispute husband's characterization of what the Nepali court intended to do. Further, the Morang District Court's order acknowledges that wife "has . . . demanded the partition share from the property in America . . ." and also makes clear that one of her pleadings "accepted" that property located in the United States would be partitioned. Whatever wife's initial expectations might have been, the ultimate outcome of the Nepali litigation *that she initiated* could not possibly have come as a surprise.

---

[7] The parties did not own any real estate in Virginia. Therefore, this case does not present the issue of a foreign court disposing of real estate located in Virginia.

- 13 -

C. The circuit court's well-founded interpretation of the parties' stipulation forecloses relitigation of wife's claim that husband dissipated marital assets.

Wife's third assignment of error is that the circuit court erred in concluding that wife

> was given a fair opportunity to be heard during the Morang District Court proceedings when [husband] failed to disclose all marital assets and provided false evidence and other information to the Morang District Court to support his waste and dissipation of marital assets which was specifically done in contemplation of divorce and was in violation of the standing *Pendente Lite* order.

It is undisputed that husband transferred large sums of money to family members. Wife initiated forgery proceedings in the Nepali court attacking these transfers. Husband argued that he made these transfers to repay loans extended by family members. The Nepali court, after hearing evidence from both sides and "studying the documents enclosed with the case file," concluded that wife had failed to prove her case. It accordingly ruled in husband's favor. Wife agreed by stipulation to be bound by the Nepali court's decisions. The circuit court specifically found that wife received a fair hearing in Nepal and that she had the opportunity to present her case and be heard. That conclusion finds ample support in the record. Wife, who is bound by the joint stipulation not to relitigate issues litigated to finality in Nepal, may not now reopen this issue for another round of litigation in Fairfax County.

D. Wife's decision to pursue the division of property in the Nepali court also forecloses her claim for spousal support.

Wife also assigns error to the circuit court's conclusion that the Nepali court's division of property prevents her from seeking spousal support in Fairfax County. As noted above, wife agreed to be bound by whatever issues were litigated to finality in Nepal. Under the law of Nepal, the allocation of property is the means by which a divorced woman is to support herself – there is no spousal support after the property is partitioned. The record indicates that, generally speaking, the class of property available for distribution in Nepal is broader than what would have been available for distribution in Virginia. Under Virginia law, property acquired before

- 14 -

the marriage, as well as property inherited during the marriage, constitutes separate property. Code § 20-107.3(A)(1). In contrast, Nepali law calls for the distribution of property gifted before the marriage, as well as inherited property. Once the court made a full distribution of property to her, wife could no longer claim spousal support under the law of Nepal. In other words, the proceeding wife initiated in Nepal was not confined to distribution of property located there, with the remainder of the issues to be decided by a court in Virginia. Instead, the court in Nepal distributed all of the parties' property. That distribution of property foreclosed wife from seeking spousal support under the law of Nepal. Wife agreed that resolution of legal issues in the courts of Nepal would foreclose relitigation of those issues in Virginia. Accordingly, notwithstanding wife's initial reservation of the right to litigate the issue of spousal support in Fairfax, the circuit court correctly concluded that the parties' stipulation precluded wife from seeking spousal support following the conclusion of the proceedings in Nepal.

III. FULL FAITH AND CREDIT, COMITY, AND UNCLEAN HANDS

Wife claims in her first assignment of error that the circuit court erred by giving full faith and credit to the Nepali court's division of property. First, we note that under settled law, the Full Faith and Credit Clause of the United States Constitution, Article IV, Section 1, does not apply to the judgments of foreign nations. Oehl v. Oehl, 221 Va. 618, 622, 272 S.E.2d 441, 443 (1980). Instead, principles of comity apply to such judgments. Id.; see also McFarland v. McFarland, 179 Va. 418, 430, 19 S.E.2d 77, 83 (1942) (discussing comity). Wife urges us to apply ordinary principles of comity to this case. Contending that Nepal's support and equitable distribution laws differ from Virginia's and that Nepali courts do not accord reciprocity to the divorce decisions of our (or our sister states') courts, she argues that we should refuse to recognize the Nepali court's decisions.

- 15 -

This, however, is not the typical comity case where a party obtains a judgment in a foreign nation and then seeks to have it recognized in Virginia. Here, wife agreed that she would not relitigate issues resolved in the Nepali court. She then initiated multiple proceedings in Nepal. Given our ruling as to the stipulation's preclusive effect, ordinary principles of comity do not come into play. Instead, the case is controlled by the parties' joint stipulation, which, as we have noted, forecloses wife from sidestepping the adverse judgment that she obtained in Nepal.

Wife contends in her final assignment of error that the circuit court erred when it held that she had unclean hands and that she was guilty of "double dipping." The parties assume that the equitable doctrine of unclean hands doctrine applies. We have held, however, that "[t]he 'clean hands doctrine' is unavailable to a party when it is asserted in the context of equitable distribution proceedings," Westbrook v. Westbrook, 5 Va. App. 446, 457, 364 S.E.2d 523, 530 (1988), and that it "does not apply to the determination of a spousal support award pursuant to Code § 20-107.1," Huger v. Huger, 16 Va. App. 785, 791, 433 S.E.2d 255, 259 (1993). We explained in Westbrook that although divorce cases appear on the chancery side of the docket, the many statutory limitations placed on divorces differentiate those cases from ordinary suits in equity. 5 Va. App. at 455-57, 364 S.E.2d at 529-30. Consequently, in adjudicating these cases, we look to the terms of the statute rather than equitable maxims. Id. at 457, 364 S.E.2d at 530. See also Huger, 16 Va. App. at 790-91, 433 S.E.2d at 258-59 (relying from Westbrook and holding that spousal support awards turn on statutory considerations). Consistent with these holdings, we decline to apply the equitable doctrine of unclean hands here.[8] Because the circuit

---

[8] Husband requests attorney's fees in connection with his defense of this appeal. See O'Loughlin v. O'Loughlin, 23 Va. App. 690, 695, 479 S.E.2d 98, 100 (1996). Considering the record and the arguments before us, we deny his request.

- 16 -

court invoked unclean hands as a secondary ground for its decision, the doctrine's inapplicability does not change our conclusion as to the stipulation's preclusive effect.

CONCLUSION

We affirm the decision of the circuit court.

<u>Affirmed.</u>