COURT OF APPEALS OF VIRGINIA

Present: Judges Humphreys, McCullough* and Senior Judge Haley
Argued at Fredericksburg, Virginia

THEODORE V. MUNDY, III

                                                        OPINION BY
v.      Record No. 1025-15-4                JUDGE JAMES W. HALEY, JR.
                                                        APRIL 5, 2016

ALISON D. MUNDY


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Michael F. Devine, Judge

Jennifer A. Mullett (Mullett Dove Meacham & Bradley, PLLC, on
briefs), for appellant.

Stephen G. Cochran (Roeder & Cochran, PLLC, on brief), for
appellee.


I.

Code § 20-107.1(B), referencing Code § 20-91(A)(1), denies support to an adulterous

spouse. This bar is subject to a narrow exception:

> [T]he court may make [a support] award notwithstanding the
> existence of [adultery] if the court determines from clear and
> convincing evidence, that a denial of support and maintenance
> would constitute a manifest injustice, based upon the respective
> degrees of fault during the marriage and the relative economic
> circumstances of the parties.

Code § 20-107.1(B).

Relying on that exception, the trial court awarded support to an adulterous wife. Husband

maintains that the statutory standard for the exception has not been met. We agree and reverse.

---

* Justice McCullough participated in the hearing and decision of this case prior to his
investiture as a Justice of the Supreme Court of Virginia.

II.

The facts in this case are undisputed. In that posture:

> The findings of a trial court after an *ore tenus* hearing should not be disturbed on appeal unless they are plainly wrong or without evidence to support them. A trial court's conclusion based on undisputed evidence, however, does not have the same binding weight on appeal. Moreover, a fact finder may not arbitrarily disregard uncontradicted evidence that is not inherently incredible.

Stroud v. Stroud, 49 Va. App. 359, 372, 641 S.E.2d 142, 148 (2007) (quoting Schweider v. Schweider, 243 Va. 245, 250, 415 S.E.2d 135, 138 (1992)).

Those facts are as follows: The trial court's March 30, 2015 letter opinion states:

> During closing argument, counsel for [wife] conceded that there was no significant fault on [husband]'s part. The [c]ourt agrees. [Husband] made nearly all of the monetary contributions to the well-being of the family, and made significant and consistent non-monetary contributions. [Husband] dedicated virtually all of his non-working hours to his family. He was involved in the daily care of the children and made substantial contributions to their extracurricular activities.

(Footnote omitted.)

Husband took the family on vacations. He and wife shared weekend trips together, and they went to fine restaurants, the theater, the opera, and the symphony. He supported wife's interests in the arts and attended and recorded her performances in her rock band.

The trial court's letter opinion also provides:

> [Wife] is a graduate of Rice University and holds a degree in Mechanical Engineering. [Wife] has not worked outside of the home since 1990, except for a period of six to nine months in 2001 to 2002, when she worked as a sales person at an art gallery in a shopping mall. [Wife] has extensive and valuable volunteer experience. Anthony Bird, the occupational rehabilitation expert, testified that [wife] has strong innate abilities, interpersonal skills, management skills, writing ability and computer skills that are transferrable across industries. The [c]ourt believes that within a few months, [wife] could find part-time employment earning

approximately $22 per hour.  If [wife] were to work 25 to 30 hours
per week, she could earn between $27,500 and $33,000 per year.

(Footnotes omitted.)  In contrast, husband earned in excess of $850,000 per year.

Wife admitted to numerous acts of adultery with a member of the rock band in which she

participated and with her personal trainer.[1]

Pursuant to the parties' property settlement agreement, wife received assets worth

approximately $1.8 million, including about $397,000 in cash and over $1.3 million in retirement

funds.  Husband's net worth is about $1 million.  Husband received the marital home, which has

a net worth of $779,695.  Husband also agreed to pay all of the education expenses of the parties'

two children.  One of the children was in college, and the other child was in medical school.

The trial court relied upon the disparity in earning capacity between husband and wife to

find a "manifest injustice."

III.

In order to invoke the manifest injustice exception to Code § 20-107.1(B),

the evidence must rise to the level of "clear and convincing" proof.
A more stringent standard than preponderance of the evidence,
"clear and convincing" proof requires "that measure or degree of
proof which will produce in the mind of the trier of facts a firm
belief or conviction as to the allegations sought to be established."

Congdon v. Congdon, 40 Va. App. 255, 263, 578 S.E.2d 833, 837 (2003) (quoting Lanning v. Va.

Dep't of Transp., 37 Va. App. 701, 707, 561 S.E.2d 33, 36 (2002)).

In addition, the expression "manifest injustice," outside of domestic relations law, "has

been used synonymously with the phrase 'miscarriage of justice.'  Harris v. DiMattina, 250 Va.

306, 318, 462 S.E.2d 338, 343 (1995) (interpreting the duty imposed by Code § 8.01-1 on trial

courts to prevent unjust results in the application of a new provision of law)."  Id.

---

[1] She further admitted to post-separation acts of adultery with two other co-respondents.

- 3 -

Furthermore,

> [Code § 20-107.1(B)] limits the fact finder's discretion to two specific variables: (i) the relative degrees of fault and (ii) the economic disparities between the parties. The statute requires the decision to be "based upon" these factors. Code § 20-107.1(B). This language implies a higher level of justification than a statutory command that merely requires the trial judge to consider this or that factor.

Id. at 264, 578 S.E.2d at 837.

> "In order to find that denial of support will constitute a manifest injustice, the court must base that finding on the parties' comparative economic circumstances *and* the respective degrees of fault." Barnes v. Barnes, 16 Va. App. 98, 101-03, 428 S.E.2d 294, 298 (1993) (emphasis in original). We italicized the word "and" in Barnes precisely because the statute makes clear that the decision must be rooted in both factors.

Id. at 264, 578 S.E.2d at 838 (footnote omitted).

"By its very definition, . . . a 'manifest injustice' cannot be speculative. See Black's Law Dictionary 974 (7th ed. 1999) (defining 'manifest injustice' as 'direct, obvious, and observable')." Giraldi v. Giraldi, 64 Va. App. 676, 685-86, 771 S.E.2d 687, 692 (2015).

The two components of manifest injustice under the statute are conjunctive, not disjunctive. Neither requires proof by clear and convincing evidence independently. Rather, it is the confluence of both streams of evidence—of fault and of relative economic circumstances—that must rise, by the clear and convincing standard, to constitute manifest injustice.

The analysis in Congdon is instructive here. In Congdon, the trial court invoked the manifest injustice exception to Code § 20-107.1(B) where the wife conceded she had committed adultery. However, in that case, evidence was presented that, for twenty years, the husband exhibited "base and profane behavior" toward the wife, their children, and other family members. Congdon, 40 Va. App. at 266, 578 S.E.2d at 838. This Court stated "a reasonable jurist could put [the husband]'s 'fault' in a league apart from the type of mere incivility or

- 4 -

petulance of manners ordinarily alleged, and often proved, in nearly every contested divorce case." Id. at 266, 578 S.E.2d at 839.

In Congdon, the trial court further found "extreme disparities" in the relative economic circumstances of the parties, "'in terms of earning capacity, current incomes, and other economic assets and resources.'" Id. at 267, 578 S.E.2d at 839. The husband earned over $250,000 per year, and he received corporate dividends and gifts. His interests in stocks, real estate, and tangible assets exceeded $6 million. On the other hand, the wife had no separate assets of any significance and she worked as a receptionist, earning $10 per hour. Id. Under these circumstances, we found the trial court was not plainly wrong in finding, by clear and convincing evidence, that denying the wife spousal support would constitute a manifest injustice based upon the respective degrees of fault attributable to the parties and the disparate financial circumstances. Id.

The contrast between Congdon and the instant case could not be more striking. Here, the trial court specifically found the "primary reason for the destruction of the marriage" was wife's adultery. In addition, the trial court found "there was no significant fault on [husband]'s part." The evidence showed husband made nearly all of the monetary contributions to the well-being of the family, and he made substantial and regular non-monetary contributions to the family. He prepared meals, shared family vacations, participated in the extracurricular activities of the children, and supported wife's endeavors in the arts and her participation in the band. Wife admitted husband placed no limits on her expenditures. Thus, the evidence supports the trial court's finding that "the relative degree of fault" weighed "heavily in favor" of husband.

Furthermore, the relative economic circumstances of the parties in this case are also strikingly dissimilar to that of the parties in Congdon. In Congdon, the wife had no assets and earned $10 per hour at her job. Here, wife has assets worth more than $1.8 million, including

over $1.3 million in retirement funds. Furthermore, wife has a degree in mechanical engineering and the trial court found she could earn between $27,500 and $33,000 per year. Moreover, at the time of the March 2015 trial court hearing, wife was fifty-five years old. Therefore, she will likely be able to access the retirement funds in the foreseeable future. In addition, husband is solely responsible for the costs of the children's higher education.

We discern the legislative impulse behind the manifest injustice exception is to prevent leaving a spouse destitute as a result of an act of adultery. It would be a manifest injustice to require a faultless spouse to pay support to a work-capable, millionaire spouse, guilty of repeated acts of adultery with several co-respondents. The disparity in earning capacity, on these facts, is not sufficient to rise to the level of a manifest injustice. Accordingly, we reverse the decision of the trial court in awarding spousal support.

IV.

Both parties request attorney's fees and costs incurred on appeal.

> The rationale for the appellate court being the proper forum to determine the propriety of an award of attorney's fees for efforts expended on appeal is clear. The appellate court has the opportunity to view the record in its entirety and determine whether the appeal is frivolous or whether other reasons exist for requiring additional payment.

O'Loughlin v. O'Loughlin, 23 Va. App. 690, 695, 479 S.E.2d 98, 100 (1996).

Having reviewed and considered the entire record in this case, we find it appropriate to award husband attorney's fees and costs. Given that husband prevailed, we hold that husband is entitled to a reasonable amount of attorney's fees and costs, and we remand for the trial court to set a reasonable award of attorney's fees and costs incurred by husband in this appeal. See Bchara v. Bchara, 38 Va. App. 302, 318, 563 S.E.2d 398, 406 (2002).

V.

For the foregoing reasons, the trial court's award of spousal support is reversed and dismissed. We remand this case to the trial court solely for determination and award to husband of the appropriate appellate attorney's fees and costs, which should also include any additional attorney's fees and costs incurred in the remand hearing.

<u>Reversed and dismissed, and remanded</u>.