COURT OF APPEALS OF VIRGINIA

Present:   Judges Chafin, Decker and AtLee
Argued at Richmond, Virginia


CHARLES C. PATTILLO, JR.
                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 1334-17-2                   JUDGE RICHARD Y. ATLEE, JR.
                                                        MAY 29, 2018
ALISON PATTILLO


FROM THE CIRCUIT COURT OF SPOTSYLVANIA COUNTY
Ricardo Rigual, Judge

Lawrence D. Diehl (Barnes & Diehl, P.C., on brief), for appellant.

Alan C. Bowden (Michael E. Kinney; Bowden Cooch & Meyer
PLLC; Turner & Kinney, A Professional Corporation, on brief),
for appellee.


Charles Pattillo, Jr. ("husband"[1]) appeals a decision of the Circuit Court of Spotsylvania

County ("the circuit court") in favor of Alison Pattillo ("wife"). Husband's seven assignments of

error[2] present essentially one question: Did the circuit court err when it awarded spousal support

to wife? We find no such error, and affirm.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] We use the designations "wife" and "husband" for clarity, recognizing that such terms actually describe the parties' former, rather than current, legal relationship.

[2] On November 9, 2017, pursuant to Rule 5A:25(d), husband filed a total of eight assignments of error with this Court. One of those assignments of error read as follows: "The trial court erred in its award as to the amount and duration of the award of spousal support as excessive and an abuse of the trial court's discretion under § 20-107.1 of the Code of Virginia." Husband omitted this assignment of error from his brief, and for that reason we deem it abandoned and decline to address it.

I. FACTS

As an appellate court, we "view the facts in the light most favorable to the party prevailing before the trial court." Bottoms v. Bottoms, 249 Va. 410, 414, 457 S.E.2d 102, 105 (1995). We also draw "all reasonable inferences fairly deducible" from those facts. Bajgain v. Bajgain, 64 Va. App. 439, 443, 769 S.E.2d 267, 269 (2015) (quoting Anderson v. Anderson, 29 Va. App. 673, 678, 514 S.E.2d 369, 372 (1999)). Here, wife prevailed in the circuit court.

A. Background

Married in 1997, husband and wife separated in 2015. In 2016, citing wife's adultery, husband filed for divorce. Prior to trial, the parties resolved all issues but two: the grounds upon which divorce would be granted, and whether wife would receive spousal support. Ultimately, the circuit court granted husband a divorce on the ground of wife's adultery, and awarded wife $3,000 per month in spousal support, indefinitely.

B. The Parties' Financial Positions and Lifestyle

The parties enjoyed a relatively high standard of living during the marriage. They lived in a home worth in excess of half a million dollars, in a lakeside community where they also kept a boat. They traveled, both together and separately. When the parties married, husband was in the Air Force. He retired in 2007, and has worked since then as a defense contractor, and later a civilian employee of the federal government. Husband has a college degree and three master's degrees; he earns nearly $260,000 per year.[3] By contrast, wife (a native of Great Britain) has the equivalent of a high school diploma.

---

[3] This amount includes both income from his current job and retirement income from his military service.

Wife spent the majority of the marriage as a stay-at-home mother to the parties' two children.[4] The circuit court observed that "[a]fter the parties were married in 1997 and had children, the parties agreed that Wife would stay home to take care of the children and the home." As a result, the circuit court concluded, "Wife sacrificed having a job to support the children." She worked outside the home only sporadically, and at the time of the trial she was working retail earning $9.00 per hour. At trial, husband's vocational expert testified that wife's annual earning capacity was less than $25,000.

## C. Adultery

At the start of the trial, wife conceded that she had committed pre-separation adultery. That adultery involved two different men, both of whom were neighbors and friends of the parties. The adultery spanned several years leading up to the parties' 2015 separation. In addition to exchanging sexual texts and photos with the two men, wife had sex with them in cars around the parties' neighborhood and in the parking lot of a local Home Depot.

## D. Other Factors Contributing to the Breakdown of the Marriage

In its letter opinion, the circuit court declared that although "[t]here is no doubt that Wife's adulterous behavior led to the demise of the marriage" it was "clear to the [c]ourt that Husband's inattention to Wife and the amount of time he devoted to his career, which often took him away from home at least one week of every month, led to the gradual dissolution of the marriage before Wife committed adultery." In reaching this conclusion, the circuit court found that husband, who "wakes up at 3:15am to get ready for work and gets home between 5pm and 6pm," worked so much "that he paid little to no attention to Wife or the children once he got home from work." Although husband "would acknowledge the family when he got home," he

---

[4] By the time of trial, one of the children was preparing to enter college, and the other had nearly finished high school.

"would be glued to his computer once he sat down until he went to sleep."  The circuit court's

opinion letter went on to summarize the disintegration of the marriage in this way:

> Wife testified that the marriage was a loveless and lonely place as far back as the early 2000's.  Husband was unemotional and both parties were non-confrontational which would result in the parties failing to communicate with each other.  Both parties admitted that their lack of communication was a large component in the dissolution of the marriage.
>
> Several witnesses who knew Wife and Husband over the years testified that Husband always tried to make Wife happy.  However, Wife would complain about Husband's lack of socializing with her and their friends and his unwillingness to spend money.  Wife approached Husband in 2011 about her unhappiness and Husband agreed to attend counseling.  Husband maintains that he took many steps to improve the marriage including pastoral counseling, attending Christian-based therapy and church men's groups, and reading Christian-based books.  Additionally, Husband claims he made [an] intentional effort to be more social, attend more social events and stay longer at social events.  A year or so after Husband attended counseling, Husband asked Wife about the state of their marriage and Wife felt Husband had made no positive changes thus resulting in her continued unhappiness in the marriage.
>
> Because Husband maintained strict control over their financial accounts, Wife was not privy to the family finances at any time during the marriage.  Per Wife's testimony, Husband was very strict about how much money they could spend every month.  Husband, without Wife's approval, would give the church $300 every week but only allotted Wife $100 a month for discretionary spending.  Per Husband's testimony, Wife went on multiple trips with her girl friends during the marriage and witnesses testified that she never seemed to want for anything.  Wife always had access to the parties' joint accounts and credit cards even after the parties separated.
>
> Husband testified that his lack of communication skills, work schedule and exhaustion contributed to the demise of the marriage.  And the [c]ourt does so find.  Therefore, even though Wife committed adultery in the years immediately prior to the parties' separation, the [c]ourt finds that the marriage was irretrievably lost due to gradual dissolution caused by <u>mutual</u> inattention and fault from both parties.

The circuit court then examined the facts in light of Code § 20-107.1 and the holding of Barnes v. Barnes, 16 Va. App. 98, 428 S.E.2d 294 (1993). The circuit court found "that Wife contributed almost all of the nonmonetary contributions to the family and Husband was the only contributor to the monetary well-being of the family."

Ultimately, the circuit court concluded as follows:

> After consideration of the evidence and arguments presented, including the relative economic circumstances of the parties and their respective degrees of fault leading to the dissolution of this marriage, the [c]ourt finds that a denial of spousal support and maintenance to Wife would constitute a manifest injustice. Thus, in weighing the relative needs, earning capacities and abilities of the parties, their ages, the duration of the marriage, and the manner in which the parties were accustomed to living during the marriage, it is hereby adjudged, ordered and decreed that Husband shall pay to the Wife the sum of $3,000.00 [per month] . . . .

Husband appealed to this Court after the circuit court denied his motion to reconsider.

## II. ANALYSIS

### A. Standard of Review

"Under Code § 8.01-680, a factual determination cannot be reversed on appeal unless 'plainly wrong or without evidence to support it.'" Congdon v. Congdon, 40 Va. App. 255, 261, 578 S.E.2d 833, 836 (2003). "This standard applies to a 'trial court's decision to award spousal support to a party despite his or her adultery' as it does to any other domestic relations case," id. (quoting Rahbaran v. Rahbaran, 26 Va. App. 195, 212, 494 S.E.2d 135, 143 (1997)), because "[w]hether and how much spousal support will be awarded is a matter of discretion for the trial court," id. at 262, 578 S.E.2d at 836 (quoting Northcutt v. Northcutt, 39 Va. App. 192, 196, 571 S.E.2d 912, 914 (2002)).

B.  Award of Support to an Adulterous Spouse

Code § 20-107.1(B) states, in relevant part:

> [N]o permanent maintenance and support shall be awarded from a spouse if there exists in such spouse's favor a ground of divorce under the provisions of subdivision A (1) of [Code] § 20-91.[5] However, the court may make such an award notwithstanding the existence of such ground if the court determines from clear and convincing evidence, that a denial of support and maintenance would constitute a manifest injustice, based upon the respective degrees of fault during the marriage and the relative economic circumstances of the parties.

Thus a court may award support to an adulterous spouse if it finds, based upon clear and convincing evidence, that denial of support would be a manifest injustice, in light of the parties' "respective degrees of fault during the marriage" and the parties' "relative economic circumstances."  Husband concedes that "consideration of the relative economic circumstances of the parties is not in issue in this case" and, thus, "that prong of the test would be met."

Husband alleges that the circuit court erred in finding that appellant was at fault at all for the breakdown in the marriage.  He also asserts that the "gradual breakdown" of a marriage cannot constitute fault and that wife did not present corroboration of any fault on husband's part.  For these reasons, husband argues, there was no manifest injustice permitting an award of spousal support.

This case fits squarely within the framework announced twenty-five years ago in <u>Barnes v. Barnes</u>, 16 Va. App. 98, 428 S.E.2d 294 (1993).  In that case, the wife committed post-separation adultery, and the trial judge granted the husband a divorce on that ground.  Nonetheless, the trial judge awarded spousal support to the wife, finding that to deny her support would constitute a "manifest injustice."  <u>Barnes</u> observed that "[i]n order to find that denial of support will constitute a manifest injustice, the court must base that finding on the parties'

_____

[5] Code § 20-91(A)(1) refers to "adultery . . . committed outside the marriage."

comparative economic circumstances *and* the respective degrees of fault." Id. at 102, 428 S.E.2d at 298. The husband conceded that he was in a "superior economic situation" to the wife, but "argue[d] that Code § 20-107.1 preclude[d] the trial judge from granting support to his wife because there can be no 'respective degrees of fault' where he was not found to have committed any marital fault and she was found to have committed adultery." Id. The Barnes opinion concluded, however, that "'[r]espective degrees of fault during the marriage' are not limited to legal grounds for divorce" because the term "'fault during the marriage' encompasses all behavior that affected the marital relationship, including any acts or conditions which contributed to the marriage's failure, success, or well-being." Id. Although the divorce was *granted* based solely upon wife's adultery, husband was partially at "fault," *for purposes of determining whether spousal support would be awarded* in light of Code § 20-107.1(B). The Barnes opinion stated:

> The marriage had been irretrievably lost due to gradual dissolution caused by *mutual* inattention and fault from both parties. The trial judge found that the husband's inattention to the wife and the amount of time he devoted to his business which often took him away from home, and her inattention to him by moving out of the marital bed and watching television late into the night, led to the gradual dissolution of the marriage.

Id. at 103, 428 S.E.2d at 298.

Husband points to Reid v. Reid, 7 Va. App. 553, 375 S.E.2d 533 (1989), and Sprott v. Sprott, 233 Va. 238, 355 S.E.2d 881 (1987), among other cases, in support of his position. However, these cases do not stand for the proposition that only fault which served as the basis for the granting of a fault-based divorce can serve as "fault" for purposes of assessing the parties "respective degrees of fault during the marriage" under Code § 20-107.1(B). Instead, Sprott and Reid hold that the gradual breakdown in the marital relationship cannot serve as the ground for a

fault-based divorce. Here, there is no dispute (on appeal) as to the ground for divorce: the circuit court granted the divorce based upon wife's admitted adultery.

Courts may consider a gradual breakdown in the marital relationship when assessing the parties' "respective degrees of fault during the marriage" under Code § 20-107.1(B). We now examine whether the circuit court erred in finding such fault on husband's part. Husband relies on Giraldi v. Giraldi, 64 Va. App. 676, 771 S.E.2d 687 (2015), and Mundy v. Mundy, 66 Va. App. 177, 783 S.E.2d 535 (2016), to support his argument that he was not at fault. We find those cases materially distinguishable.

In Giraldi, the trial court granted a divorce on the ground of the wife's adultery, but awarded spousal support to her notwithstanding that adultery. The wife in that case testified that the husband traveled out of town frequently and when he was home, he was focused on work and not on her. Giraldi, 64 Va. App. at 680, 771 S.E.2d at 690. The trial court found that to deny a reservation of spousal support would constitute a manifest injustice. A panel of this Court reversed. The reason for the reversal, however, was that the trial court never "actually determined, by clear and convincing evidence, that invoking the spousal support bar of Code § 20-107.1(B) would cause a manifest injustice based on an assessment of the parties' 'respective degrees of fault' and the parties' 'relative economic circumstances.'" Id. at 684, 771 S.E.2d at 691. The trial "court never expressly mentioned the two factors upon which a clear and convincing demonstration of manifest injustice must be based." Id. Since "a 'manifest injustice' cannot be speculative," the Court reversed. Id. at 685-86, 771 S.E.2d at 692. In contrast to the trial court in Giraldi, the circuit court here did discuss the parties' "respective degrees of fault"

and "relative economic circumstances." In its letter opinion, the circuit court analyzed the facts in light of those two factors and in light of Barnes.[6]

The Mundy case, also involving an adulterous wife, is inapposite as well. The test contained in Code § 20-107.1(B) is "conjunctive, not disjunctive. Neither [factor] requires proof by clear and convincing evidence independently. Rather, it is the confluence of both streams of evidence—of fault and of relative economic circumstances—that must rise, by the clear and convincing standard, to constitute manifest injustice." Mundy, 66 Va. App. at 182, 783 S.E.2d at 538. The trial court in Mundy, however, treated the test as disjunctive. It found that the husband "made significant and consistent non-monetary contributions [to the marriage]. [The husband] dedicated virtually all of his non-working hours to his family. He was involved in the daily care of the children and made substantial contributions to their extracurricular activities." Id. at 180, 783 S.E.2d at 536 (alteration in original) (quoting trial court) (footnote omitted). Furthermore, the husband and wife "went to fine restaurants, the theater, the opera, and the symphony. H[usband] supported wife's interests in the arts and attended and recorded her performances in her rock band." Id. The husband in Mundy was not at fault. Indeed, "[d]uring closing argument, counsel for [wife] conceded that there was no significant fault on [husband]'s part." Id. (second and third alterations in original) (quoting trial court). Although a panel of this Court reversed the trial court's decision to award spousal support to the adulterous wife in Mundy, the decision in that case was built upon factual and legal predicates absent here.[7]

---

[6] Although the circuit court referred at one point in its letter opinion to "Virginia Code § 20-107.2," the discussion that followed the reference makes clear that the circuit court was in fact referring to Code § 20-107.1(B).

[7] In addition to pointing out that the husband was not at fault, the Mundy opinion disagreed with the trial court's conclusion that the economic disparity factor weighed in favor of granting support, observing that the wife had "assets worth more than $1.8 million," and had earned a college degree in mechanical engineering. Mundy, 66 Va. App. at 183-84, 783 S.E.2d at 538.

Finally, husband asserts that no evidence corroborates wife's claim of any fault on husband's part. He argues that "[t]he only evidence of the conduct relating to fault was [wife]'s self-serving testimony." In fact, husband himself supplied the corroboration through his own testimony. As the circuit court observed in its letter opinion: "Husband testified that his lack of communication skills, work schedule and exhaustion contributed to the demise of the marriage." For this reason, we find no merit in husband's contention that no evidence corroborated wife's claim that he was at fault.

### C. Husband's Request that this Panel Overrule Barnes

Husband's attorney spent much of his oral argument urging this panel to overrule Barnes. Even if we wished to do so, we could not. "[T]his Court . . . recognizes the doctrine of interpanel accord. A holding by one panel of the Court of Appeals of Virginia 'bind[s] all other three-judge panels under the interpanel accord doctrine.'" White v. Commonwealth, 67 Va. App. 599, 612 n.7, 798 S.E.2d 818, 824 n.7 (2017) (third alteration in original) (quoting Startin v. Commonwealth, 56 Va. App. 26, 39 n.3, 690 S.E.2d 310, 316 n.3 (2010) (*en banc*)). Under that doctrine, "[a] decision of one panel . . . 'cannot be overruled except by the Court of Appeals sitting *en banc* or by the Virginia Supreme Court.'" Id. (quoting Congdon, 40 Va. App. at 265, 578 S.E.2d at 838). Neither this Court, sitting *en banc*, nor the Supreme Court has ever overruled Barnes. Additionally, the General Assembly may legislatively countermand many appellate decisions. Here, though, we find that the General Assembly has acquiesced in this Court's interpretation of what is now Code § 20-107.1(B), as expressed in Barnes.

In 1993, when Barnes was decided, Code § 20-107.1 provided that no support would be awarded to a spouse whose adultery served as a ground for divorce. In 1993, Code § 20-107.1 contained the following sentence as a caveat:

> However, the court may make such an award notwithstanding the existence of [adultery] if the court determines from clear and

convincing evidence, that a denial of support and maintenance would constitute a manifest injustice, based upon the respective degrees of fault during the marriage and the relative economic circumstances of the parties.

Twenty-five years later, that sentence in Code § 20-107.1 remains unchanged, although the General Assembly has modified *other* parts of Code § 20-107.1 since 1993. See 1998 Va. Acts ch. 604 (dividing Code § 20-107.1 into lettered subsections; modifying then-existing language in newly-created subsections A, B, C, and E; and adding new language constituting subsections D, F, and G); 2003 Va. Acts ch. 625 (amending subsection (D) and creating subsection (H)); 2016 Va. Acts ch. 477 (amending subsections A and E); 2016 Va. Acts ch. 615 (amending subsection E).

"When the General Assembly acts in an area in which one of its appellate courts already has spoken, it is presumed to know the law as the court has stated it and to acquiesce therein, and if the legislature intends to countermand such appellate decision it must do so explicitly." Weathers v. Commonwealth, 262 Va. 803, 805, 553 S.E.2d 729, 730 (2001); see also McGrath v. Dockendorf, 292 Va. 834, 840, 793 S.E.2d 336, 339 (2016) ("The General Assembly is presumed to be aware of the decisions of this Court when enacting legislation."); cf. Barson v. Commonwealth, 284 Va. 67, 74, 726 S.E.2d 292, 296 (2012) (observing that when the Court of Appeals has used words in a particular way in the past, "[t]he legislature is presumed to be aware of this usage" and "[i]ts acquiescence is deemed to be approval").

This panel is not empowered to rule contrary to the reasoning enunciated in Barnes. In the twenty-five years since Barnes was decided, neither the Court of Appeals sitting *en banc* nor the Supreme Court of Virginia has overruled Barnes. During that same two-and-a-half decades, the General Assembly has declined to invalidate Barnes legislatively. We decide this case consistently with Barnes, as we must.

D.  Both Parties' Requests for Appellate Attorney's Fees and Costs

Both parties request an award of appellate attorney's fees and costs.  As an appellate court, we have "the opportunity to view the record in its entirety and determine whether the appeal is frivolous or whether other reasons exist for requiring additional payment."  O'Loughlin v. O'Loughlin, 23 Va. App. 690, 695, 479 S.E.2d 98, 100 (1996).

> The decision of whether to award attorney's fees and costs
> incurred on appeal is discretionary. . . .  In domestic relations
> cases, we award appellate attorney's fees when the arguments on
> appeal are "not fairly debatable under any reasonable construction
> of the record or the governing legal principles."

Friedman v. Smith, 68 Va. App. 529, 545-46, 810 S.E.2d 912, 919-20 (2018) (citations omitted) (quoting Brandau v. Brandau, 52 Va. App. 632, 642, 666 S.E.2d 532, 538 (2008)).  After reviewing the entire record and the arguments on appeal, we decline to award either party their costs or attorney's fees incurred on appeal.

III. CONCLUSION

For the reasons stated above, we find that the circuit court did not abuse its discretion when it awarded wife spousal support, notwithstanding her adultery.

Affirmed.