# Richmond

## COVERSTONE LAND LIMITED PARTNERSHIP v. McKEON CONSTRUCTION COMPANY.

June 13, 1975.

Record No. 740778.

Present, All the Justices.

*Barbara J. Fried* (*Fried, Fried & Klewans*, on brief), for plaintiff in error.

*Jean-Pierre Garnier* (*Kohlhaas & Garnier*, on brief), for defendant in error.

Per Curiam.

McKeon Construction Company, contract purchaser of a tract of land in Prince William County, brought the present action against Coverstone Land Limited Partnership, seller of the land, to recover $50,000.00, the amount of a deposit McKeon had paid pursuant to the contract. Coverstone filed a counterclaim against McKeon to recover the $50,000.00 deposit as liquidated damages for McKeon's alleged breach of the contract. The trial court awarded judgment in favor of McKeon for the amount of the deposit, and Coverstone appeals.

The contract, with an effective date of September 28, 1971, and a settlement date of March 15, 1972, contemplated submission by McKeon, prior to the settlement date, of a preliminary site plan for development of the land. McKeon submitted the site plan to appropriate county officials and also filed with the county an application for a special use permit for construction on the land of approximately 200 "quadraplex units."

In discussions concerning the proposed development, officials of the county and of the State Highway Department requested that McKeon dedicate to public use a portion of the land, consisting of a strip 110 feet in width and approximately 500 feet in length, as part of a right-of-way for a proposed road to alleviate congestion on the existing highway in the area. McKeon refused to dedicate the right-of-way. Thereafter, on March 14, 1972, citing as its reason "the request for the 110 foot right-of-way," McKeon repudiated the contract and demanded return of its deposit.

At issue is paragraph 12 of the contract between McKeon and Coverstone. The paragraph reads, in pertinent part, as follows:

> *"Condemnation.* In the event that at the time of settlement all or any part of the property is (or has previously been) acquired, or is about to be acquired, by authority of any governmental agency in the exercise of its power of eminent domain . . . (*or in the event that at such time there is any threat or imminence of any such acquisition by any such governmental agency*), purchaser shall have the right, at its option, to terminate this contract and recover its deposit hereunder. . . ." (Emphasis added.)

McKeon does not claim that, at the time it repudiated the contract, any of the land had been or was about to be acquired by a governmental agency in the exercise of its power of eminent domain. The opening clauses of paragraph 12 do not come into play, therefore, except as they are necessary to determine the meaning of the entire paragraph. This places the focus of our inquiry upon the italicized language contained in the second set of parentheses in paragraph 12.

McKeon reads the italicized language to provide that if, at the time it repudiated the contract, there was a threat or an imminence of acquisition of a portion of the land *by any means*, then it had the right to terminate the contract. The request for dedication was a

threat of acquisition, McKeon says, and it therefore had proper ground to repudiate the contract.

We do not agree. We think it is conclusively clear that the words "any such acquisition," appearing in the second set of parentheses in paragraph 12, refer directly to the language immediately preceding the parenthetical clause and limit the threat or imminence, which was intended by the parties as an escape clause for McKeon, to a threat or an imminence of acquisition by a governmental agency *in the exercise of its power of eminent domain.* Any other reading of paragraph 12 would give its language a strained and distorted meaning.

Failing in this part of its argument, McKeon next contends that the request for dedication did constitute a threat or an imminence of acquisition by a governmental agency in the exercise of its power of eminent domain, within the meaning of paragraph 12. Its representatives, McKeon says, were told by county and state officials that if the request for dedication was not complied with, approval of the site plan for development of the land would be "deferred." The combination of the request for dedication and the threatened deferral of approval of the site plan, McKeon argues, amounted to a requirement that the dedication be granted as a *quid pro quo* for approval of the plan and constituted a threat of "a taking within the concept of eminent domain."

Again, we must disagree with McKeon. We express no opinion, however, with respect to the question of the authority of the county and state officials to require the dedication as a *quid pro quo* for approval of the site plan, if, indeed, such a requirement existed. We are concerned only with the contractual language employed by the parties themselves. Within that language, there is no possible interpretation which would transform the request for dedication into a threat or an imminence of acquisition by a governmental agency in exercise of its power of eminent domain.

Finally, McKeon contends that it proved that if it "did not voluntarily turn over the land as requested, condemnation would have been the result." Thus, McKeon argues, there was, at the time it repudiated the contract, a threat or an imminence of acquisition of part of the land by a governmental agency in exercise of its power of eminent domain.

The record, however, does not support McKeon's contention. Indeed, the very testimony to which McKeon directs us refutes the

contention. This testimony was elicited from an official of the State Highway Department. The witness was asked if, failing dedication by McKeon, eminent domain "would not . . . then have been a remedy which was available." He flatly replied, "No, sir." When the point was pursued by counsel for McKeon, the witness merely conceded that condemnation was a "possibility." Describing the proposed road for which the right-of-way was sought as "a plan on paper only," the witness stated that the highway department had not approved the plan, had no funds with which to acquire the right-of-way, and had neither commenced nor threatened eminent domain proceedings to acquire the right-of-way.

This, basically and simply, is a case in which knowledgeable parties, in clear language, contracted with reference to a specific contingency which did not arise and were faced with a different contingency not contemplated by their contractual language. Had it been the intention of the parties that a mere request for dedication would serve to permit the purchaser to terminate the contract, they could have provided for that contingency by the addition of a few words to paragraph 12. They failed to make this crucial addition. The court cannot write a new contract for them.

Accordingly, we hold that McKeon did not have proper ground to terminate the contract. The judgment of the trial court will be reversed, therefore, and final judgment for $50,000.00, the amount of the deposit, will be entered here in favor of Coverstone on its counterclaim against McKeon.

*Reversed and Final Judgment.*