COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Chief Judge Decker, Judges Athey and Chaney
Argued by videoconference


GARY RICHARD HANSEN
                                          MEMORANDUM OPINION* BY
v.        Record No. 1128-21-1       CHIEF JUDGE MARLA GRAFF DECKER
                                              JUNE 28, 2022
ELLEN CHERYL HANSEN


FROM THE CIRCUIT COURT OF THE CITY OF CHESAPEAKE
Rufus A. Banks, Jr., Judge

John K. Cottrell (Cottrell Fletcher & Cottrell PC, on briefs), for
appellant.

Christopher T. Holinger (Mary T. Morgan; Golightly Mulligan &
Morgan, PLC, on brief), for appellee.


Gary Richard Hansen (the husband) appeals the circuit court's dismissal of his contract

action against Ellen Cheryl Hansen (the wife). The husband disagrees with the court's

conclusion that the wife's romantic relationship did not constitute a marriage as contemplated by

the parties' marital and separation agreement. He also challenges the exclusion of evidence in

the form of a witness deposition. Last, both parties ask for an award of attorney fees incurred on

appeal, and the husband also asks to recover his appellate costs. For the reasons below, we

affirm the judgment of the circuit court and hold that recovery of fees and costs is not available

under the terms of the agreement.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

## I. BACKGROUND[1]

The parties married in 1987 and divorced twenty-six years later. They entered into a marital and separation agreement (the agreement or contract), which was incorporated into their final divorce decree. Under the contract, the wife received a portion of the husband's military retirement. It also provided, in pertinent part, that if the wife remarried, she was to inform the husband and would no longer receive any of his retirement.

In 2019, the husband filed a breach of contract action alleging that the wife had remarried within the meaning of the agreement and failed to inform him. He sought to end the wife's receipt of a share of his retirement and to require her to reimburse him for the money she had received in violation of the contract. During the proceedings, the husband introduced evidence about the wife's relationship with her boyfriend. He also sought to introduce the deposition of an expert witness about the nature of dominant and submissive relationships, but the circuit court excluded it.

After the husband presented his case, the wife made a motion to strike the evidence. She argued that she had not remarried as that term was defined in the parties' contract. The circuit court agreed, granted the motion, and dismissed the case.

## II. ANALYSIS

The husband's assignments of error largely challenge the circuit court's conclusion that the wife did not remarry as defined in the parties' agreement. In addition, he contests the exclusion of the deposition of his witness.

---

[1] On appeal of an order granting a motion to strike, the appellate court views the evidence in the light most favorable to the nonmoving party, in this case the husband. *Curtis v. Highfill*, 298 Va. 499, 502-03 (2020). The relevant facts are undisputed in this case.

A.  Marriage under the Terms of the Contract

The husband's first five assignments of error challenge the circuit court's ruling granting the wife's motion to strike.  He disagrees with the conclusion that the evidence did not establish that the wife's romantic relationship constituted a marriage as defined by the parties' agreement.

At the motion to strike stage, the question for the circuit court was whether the plaintiff made a *prima facie* showing supporting the claim.  *Chaplain v. Chaplain*, 54 Va. App. 762, 773 (2009).  When ruling on a motion to strike the plaintiff's evidence, "a circuit court must 'accept as true all the evidence favorable to the [plaintiff,] as well as any reasonable inference a [fact finder] might draw therefrom which would sustain the . . . cause of action.'"  *Dixon v. Dixon*, 71 Va. App. 709, 714 (2020) (second and third alterations in original) (quoting *Chaplain*, 54 Va. App. at 772).  "[A]ll trial court rulings come to an appellate court with a presumption of correctness."  *Wynnycky v. Kozel*, 71 Va. App. 177, 192 (2019) (quoting *Stiles v. Stiles*, 48 Va. App. 449, 453 (2006)).

The husband's challenge to the ruling granting the wife's motion to strike has two parts. The first part is a legal challenge to the circuit court's construction of the term "marriage" as used in the contract.  The second part is a factual challenge in which he argues that the evidence showed that the wife's romantic relationship met that definition.

1.  Contractual Definition of Marriage

Agreements between spouses regarding support or property settlement are governed by the rules of construction generally applicable to contracts.  *See, e.g.*, *Price v. Peek*, 72 Va. App. 640, 646 (2020); *Dailey v. Dailey*, 59 Va. App. 734, 739 (2012).  On appeal, we review a circuit court's "interpretation of the parties' agreement *de novo*."  *Price*, 72 Va. App. at 646 (quoting *Jones v. Gates*, 68 Va. App. 100, 105 (2017)).  If "the terms of the agreement are unambiguous, [a] court[] must 'adhere to the plain meaning of [the agreement's] stated terms[]' . . . and may

not "'read into [the document] language which will add to or take away from the meaning of the words already contained'" in the agreement." *Dailey*, 59 Va. App. at 739 (third alteration in original) (quoting *Southerland v. Estate of Southerland*, 249 Va. 584, 588, 590 (1995)).

In this case, the parties' agreement provides that "'marriage' is considered to be any formal union that contractually binds [the wife] in a similar legally binding relationship ('wedding,' 'civil union,' '[h]and-fasting,' etc)."[2] The phrase "that contractually binds" is a modifier of "any formal union." It follows that "in a similarly legally binding relationship" modifies the phrase "that contractually binds." Therefore, the contract unambiguously defines marriage as a formal union that creates a contractual obligation, and that contractual obligation must be "a similarly legally binding relationship" to marriage.[3] *See Dailey*, 59 Va. App. at 739 (requiring adherence to an agreement's plain meaning if it is unambiguous).

The husband disagrees with this interpretation and emphasizes the parenthetical, which simply lists "'wedding,' 'civil union,' '[h]and-fasting,' etc." He contends that the parenthetical controls the construction of the definition of marriage under the contract. Although true that "'no part' of a contract 'should be discarded as superfluous or meaningless,'" the husband's "implausible interpretation" is not "the only one that saves the parenthetical from being wasted

---

[2] The term "wedding" describes "[t]he religious or civil proceeding that solemnizes a marriage." *Marriage Ceremony*, *Black's Law Dictionary* (11th ed. 2019). *See generally Shenk v. Shenk*, 39 Va. App. 161, 174 (2002) (referencing a dictionary when determining an undefined contractual term). Although *Black's* does not define a "civil union," it defines a "civil marriage" as "[a] marriage solemnized as a civil contract, as distinguished from one solemnized as a religious sacrament." *Marriage*, *Black's*, *supra*. A "handfasting," as relevant here, is defined as "[a] binding form of marriage practiced by some modern pagan religions." *Id.*

[3] This construction follows the "rule of the last antecedent." *See Va. Educ. Ass'n v. Davison*, 294 Va. 109, 120 (2017) (quoting *Butler v. Fairfax Cnty. Sch. Bd.*, 291 Va. 32, 37 (2015)). Under this general rule of interpretation, "referential and qualifying words and phrases . . . refer solely to the last antecedent," unless a "contrary intention appears." *Id.* (quoting *Butler*, 291 Va. at 37). "The last antecedent is the last word, phrase, or clause that can be made an antecedent without impairing the meaning of the sentence." *Id.* (quoting *Butler*, 291 at 37).

ink." *See Sweely Holdings, LLC v. SunTrust Bank*, 296 Va. 367, 380 (2018) (quoting *CNX Gas Co. v. Rasnake*, 287 Va. 163, 168 (2014)).

The parties agree that by definition, without more, the terms in the parenthetical cannot be examples of legally binding relationships. A wedding, civil union, or handfasting describes different forms of unions, but each would need some sort of formal recognition by the state in order to be legally binding. *See generally* Code § 20-13 (providing that every marriage in this Commonwealth shall be solemnized and licensed). The only logical conclusion is that the terms in the parenthetical are examples of "formal unions."

Under the plain language of the parties' agreement, for the wife to no longer be entitled to her share of the husband's retirement, she must enter into a formal union that creates a contractual obligation for her, and that contractual obligation must be "a similarly legally binding relationship" to marriage. Any other reading of the agreement "would give its language a strained and distorted meaning." *See Coverstone Land Ltd. P'ship v. McKeon Constr. Co.*, 216 Va. 6, 8 (1975).

2. Application of the Contractual Definition of Marriage to the Facts

Looking at the record with this contractual definition of marriage in mind, it contains extensive evidence about the wife's relationship with her paramour. The wife testified that she and her boyfriend were in a long-term monogamous relationship. According to the wife, they shared a bedroom in a home they owned together, maintained a joint bank account, divided household chores, and vacationed together. The wife gave her paramour two neck collars that represented their "dominant/submissive relationship."

Reviewing this record in the light most favorable to the husband, the evidence does not show that the wife entered into a formal union that contractually bound her in a "legally binding" relationship similar to marriage. Consequently, the circuit court correctly concluded that the

husband did not establish that the wife had remarried as contemplated under the parties' agreement.

The husband's argument erroneously divides the marital agreement's definition of marriage into three segments. First, the husband suggests that the wife had a formal union with her paramour, as "symbolized by the worn collar." Second, he contends that her "union" contractually bound her because she and her paramour "negotiated the terms of the relationship." Third, the husband posits that their relationship was legally binding because they intermingled their finances and jointly owned property. However, the parties' agreement does not segment the definition of marriage into three separate components. Instead, it provides in a single sentence that marriage is "any formal union *that* contractually binds [the wife] *in a* similar legally binding relationship." (Emphases added). The arrangement between the wife and her paramour about their dominant and submissive roles in the relationship is quite simply not contractually binding, much less contractually binding in a legally binding relationship similar to marriage.

For these reasons, the circuit court correctly interpreted the contractual definition of marriage at issue and concluded that the husband did not establish that the wife had entered into a marriage as contemplated under the parties' agreement. As a result, the court appropriately granted the motion to strike.

### B. Exclusion of Deposition

The husband argues that the circuit court erred by refusing to admit the deposition of his witness, Dr. Elisabeth Sheff-Stefanik. *See generally* Rule 4:7 (governing the admission of depositions).

Before trial, the husband identified Sheff-Stefanik as a witness but not as an expert witness.[4]  He sought to present the deposition testimony to introduce general information about "the BDSM (Bondage, Submission, Sadism, and Masochism) lifestyle."  The circuit court excluded Sheff-Stefanik's testimony because it determined that her insight into the customs of the general BDSM community would not help the court understand any factual matter at issue.[5]

"The determination of whether to admit evidence 'rests within the sound discretion of the circuit court and will only be disturbed on appeal upon a showing of an abuse of discretion.'"  *Stark v. Dinarany*, 73 Va. App. 733, 745 (2021) (quoting *Lee v. Spoden*, 290 Va. 235, 251 (2015)).  The appellant argues that the circuit court excluded the evidence based on its erroneous conclusion that the contract required the wife's relationship to be "'contractually binding' in the sense of being legally enforceable."  Based on our ruling that the circuit court's interpretation of the contract was not error, we conclude that this assignment of error likewise necessarily fails.

Therefore, we hold that the circuit court acted within its discretion by excluding the deposition of the husband's witness.

### C.  Attorney Fees

The husband asks for an award of appellate attorney fees and costs, and the wife asks for an award of attorney fees.

---

[4] The wife had already designated Sheff-Stefanik as an expert but then did not introduce her deposition into evidence.

[5] The court also noted that, regardless, the evidence was inadmissible because it was not properly disclosed during discovery.  Under the rule governing the discovery of expert opinions, a party can require another party "to identify" each expected expert witness, "to state the subject matter on which the expert is expected to testify, and to state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion."  Rule 4:1(b)(4).  In light of our holding, we do not reach this issue.  *See, e.g.*, *Watson-Scott v. Commonwealth*, 298 Va. 251, 258 n.2 (2019) (recognizing that appellate courts should decide cases "on the best and narrowest grounds" (quoting *Commonwealth v. White*, 293 Va. 411, 419 (2017))).

If a marital or property settlement agreement contains a provision governing attorney fees, the terms of the contract control. *See* Code § 20-109(C); *Jones v. Gates*, 68 Va. App. 100, 106 (2017); *Rutledge v. Rutledge*, 45 Va. App. 56, 61-62 (2005).

In this case, the parties' agreement provides that they "mutually agree that each party shall be solely responsible for payment of his/her own attorney[] fees," with one exception. That exception is that in the event of a breach, "the aggrieved party shall have the right to sue for damages . . . or to seek such other legal and/or equitable remedies as may be available to him or her, including reasonable attorney[] fees." In addition, pursuant to the contract, the parties "surrender[ed] . . . any and all rights each may have or may hereafter acquire . . . to . . . attorney[] fees, court costs."

Under the plain terms of the contract, since no breach of the contract occurred, neither party is entitled to recover attorney fees or appellate costs. *See generally Rutledge*, 45 Va. App. at 67 (holding that the parties' marital property settlement agreement did not allow the wife to receive an award of attorney fees). Consequently, we deny the parties' requests for attorney fees and costs incurred on appeal.

## III. CONCLUSION

We affirm the circuit court decision granting the motion to strike. The court correctly interpreted the contractual definition of marriage as not encompassing a "formal union" symbolized by the wife's act of gifting her paramour collars. Further, the court acted within its discretion by excluding the deposition of the husband's witness. Finally, based on the contract entered into by the parties, we deny the requests for attorney fees and costs incurred on appeal.

*Affirmed.*